UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 09-23248-CIV-HUCK/O'SULLIVAN

QUAIL CRUISES SHIP MANAGEMENT LTD.,

    Plaintiff,

v.

AGENCIA DE VIAGENS CVC TUR LIMITADA,
et al.,

    Defendants.
_____/

## ORDER ON MOTIONS TO DISMISS

This matter is before the Court on motions to dismiss by defendants Agencia de Viagens CVC Tur Limitada (CVC), SeaHawk North America, LLC, SeaHawk's president Rodolfo Spinelli, and Lloyd's Register North America, Inc. (Docs. 43, 44, & 55).[1]  The plaintiff, Quail Cruises Ship Management Limited, filed responses in opposition to the motions. The defendants filed reply briefs and the Court held a hearing on the motions on April 8, 2010. The Court, having considered the parties' memoranda, the complaint, the pertinent portions of the record, the parties' argument at the hearing, and being otherwise duly advised, grants in part and denies in part the motions to dismiss, and dismisses the complaint with leave to amend by May 3, 2010.

## BACKGROUND

Quail Cruises is a Bahamian corporation whose principal place of business is in Spain. Quail is in the business of operating passenger cruise ships. According to the complaint, the defendants conspired to induce Quail to purchase the passenger ship *M/V Pacific* (the famed cruise ship which appeared in the TV sitcom *Love Boat*) by misrepresenting the vessel's condition and systematically concealing its defects.

Quail acquired the *Pacific* through a stock purchase of Templeton International Inc., a Bahamian corporation whose principle asset is the *Pacific*.  The Templeton shares were originally held by a Uruguayan corporation, Flameck International S.A, whom CVC controlled.

---

[1] CVC's president, Valter Patriani, is also a named defendant in this case and is being served pursuant to the Inter-American Convention on Letters Rogatory. In the meantime, Quail has agreed to proceed without Patriani.

Flameck is not a party to this suit, and is not amenable to suit, because the share purchase agreement requires that disputes related to the agreement be resolved in arbitration and Flameck has made an arbitration demand on Quail.

SeaHawk is a Florida-based ship management company that coordinated the *Pacific*'s operations and inspections before Quail's acquisition. CVC is a tour operating company located in Brazil. After Quail became the *Pacific*'s owner, Quail was to operate what it refers to as the "hotel side" of the vessel (the passenger cabins, restaurants, casino, and shops) while CVC and SeaHawk would retain the technical and operational control over the *Pacific*'s navigation and maintenance.

Lloyd's is a classification society whose job is to inspect vessels like the *Pacific* to determine whether they are structurally and mechanically fit to operate for their intended purposes. This process is called classification. Classification services are rendered pursuant to Lloyd's standard Rules and Regulations for the Classification of Ships, which establish standards for evaluating vessels. A classification is a representation that the vessel is seaworthy and fit for its intended purpose, subject to any "conditions of class" which Lloyd's imposes. A condition of class is imposed whenever a defect is discovered that does not require immediate repair. When a condition is imposed, Lloyd's issues an "interim certificate," which describes the defect and leaves a paper trail of the inspection. Lloyd's also assigns a due date upon which the condition must be corrected and if a timely correction is not made the ship's class may be suspended (i.e., Lloyd's will no longer certify that the vessel is seaworthy). Lloyd's representations regarding classification, conditions, and interim certificates are relied on by the maritime community.

Quail claims that the defendants conspired to conceal the *Pacific*'s true, deteriorated condition in order to induce Quail to acquire the vessel, presumably at a much inflated price. According to Quail, SeaHawk influenced Lloyd's to provide favorable evaluations in order to conceal the *Pacific*'s deteriorated condition. When Lloyd's performed an annual survey in the winter of 2008, seven conditions of class were outstanding, and Lloyd's imposed 15 additional conditions on the vessel. When Quail acquired the vessel through the Templeton stock purchase, however, the interim certificates on-board the vessel indicated that all 22 conditions were duly corrected.

In the spring of 2008, CVC began soliciting Quail to acquire the vessel. The complaint alleges that Patriani met with Quail principals in Madrid, where he represented that CVC had

spent significant sums improving and repairing the *Pacific*, which was then in excellent condition. During this negotiating period, Spinelli, acting on behalf of SeaHawk, also promoted the sale. Spinelli met Quail personnel on board the *Pacific* while it was in various European ports and represented that the *Pacific* would be a wise investment for Quail. Spinelli also spoke with Quail over telephone conferences, but it is unclear from the face of the complaint where these conferences occurred and what specifically was discussed at each conference.

Patriani and Spinelli succeeded in convincing Quail to buy the *Pacific*, which it did through a stock purchase agreement executed with Flameck in June 2008. Quail paid over 10 million euros for all outstanding shares in Templeton. In July, a SeaHawk employee emailed Quail, informing it that all relevant conditions of class had been deleted.

After Quail acquired the *Pacific*, Lloyd's retained responsibility for classifying the vessel pursuant to a Request for Survey contract with Quail. Shortly after Quail's acquisition, a Lloyd's surveyor made an unscheduled visit to examine the ship. Lloyd's rules provide for unscheduled surveys in certain circumstances. Quail subsequently requested that Lloyd's explain what prompted this survey, but, Quail claims, Lloyd's has refused to provide an explanation. Whatever ultimately prompted this unscheduled survey, the surveyor's findings proved devastating for Quail. The surveyor found significant corrosion, thinning, and wastage throughout the vessel and imposed conditions of class requiring extensive repairs. Lloyd's later withdrew key certifications from the *Pacific*, which prevented it from operating as a passenger cruise ship.

Quail commissioned studies to determine the full extent and causes of the damage. The studies found that the conditions of class deleted prior to Quail's acquisition of the *Pacific* were deleted improperly—the underlying defects were never corrected and the conditions understated the actual damage, which, Quail's studies found, resulted from longstanding deficiencies that must have predated the entire period of negotiations over the vessel. Quail confronted CVC, which in turn referred Quail to SeaHawk. Spinelli continued to maintain that the vessel was in good order. Meanwhile, the *Pacific* went into dry-dock for repairs. While in dry-dock, additional inspections revealed that, in an apparent effort to conceal corrosion and wastage, someone had layered painted cement on the vessel, which is not an accepted practice in the maritime industry. Quail concluded that CVC, SeaHawk, Spinelli and Patriani knew of the *Pacific*'s true, damaged condition because of their familiarity with the vessel, and that Lloyd's

3

too must have known and concealed the *Pacific*'s condition because properly conducted surveys would have revealed substantial damage.

Quail sued SeaHawk, Spinelli, CVC, Patriani, and Lloyd's in October 2009 for securities fraud under the Securities and Exchange Act of 1934 (Count I), civil conspiracy to commit fraud (Count II), fraud in the inducement (Count III), recklessness (Count IV), negligence and negligent misrepresentations (Count V), common law fraud (Count VI), and breach of fiduciary duty (Count VII).  Excepting the negligence claim, which is asserted only against SeaHawk and Spinelli, and the fiduciary duty claim, asserted against Patriani, each claim is asserted against every defendant.

The defendants have moved to dismiss on various grounds.  SeaHawk, Spinelli and CVC move to dismiss for lack of subject matter jurisdiction and failure to join an indispensible party, Flameck, who cannot be joined because of the arbitration clause in the share purchase agreement.  CVC also moves to dismiss on the basis that it is not subject to personal jurisdiction in Florida. Finally, Lloyd's moves to dismiss for improper venue based on forum selection clauses which provide for exclusive jurisdiction in English courts and for failure to state a claim.

Quail alleges that federal question jurisdiction exists over the securities act count, maritime jurisdiction over the torts alleged in Counts II though V, and supplemental jurisdiction for the remaining state law claims.  Diversity of parties cannot serve as a basis for jurisdiction because there are foreign parties on both sides of this suit and the plaintiff is not a U.S. citizen. *See, e.g.*, *U.S. Motors v. GM Eur.*, 551 F.3d 420 (6th Cir. 2008).

## ANALYSIS

### A.     Improper Venue for Claims Against Lloyd's (Forum Selection Clause)

The Court will first address Lloyd's motion to dismiss Quail's claims against it for improper venue.  Lloyd's contends that the English courts have exclusive jurisdiction over Quail's claims.  Lloyd's argues that (1) Quail is bound by the forum selection clause in the Request for Survey contract that it entered into with Lloyd's in April 2009, (2) the forum selection clause provided in Lloyd's rules and regulations provide for the application of English law and the exclusive jurisdiction of English courts, and (3) Quail is bound by the forum selection clause incorporated in the agreements between Lloyd's, SeaHawk, and Templeton. Lloyd's contends that Quail can be bound by the forum selection clause in Lloyd's rules under the theory of direct benefit estoppel, by which a nonsignatory who seeks to exploit a contract

4

during litigation must accept its burdens along with its benefits.  The Court finds that Quail is not bound by the forum selection clause in its Request for Survey agreement with Lloyd's but is bound under the theory of direct benefit estoppel based on the agreements between Lloyd's and SeaHawk which provided for services pursuant to Lloyd's rules and regulations.

### 1. Forum Selection Clause in Lloyd's-Quail Agreement

In April 2009, Lloyd's and Quail entered into an agreement entitled "Request for Survey," which provided for Lloyd's to perform survey, classification, and certification services for the *Pacific*.  Paragraph 13 of the contract is a forum selection clause, which provides that: "Any dispute, claim, or litigation between any members of the [Lloyd's] Group and the Client arising from or in connection with the Services provided by any member of the [Lloyd's] Group shall be subject to the exclusive jurisdiction of the English courts and will be governed by English law."  Paragraph 1 further defines services as "any and all survey, classification, certification and reporting services provided at any time to the Client by any entity that is part of the [Lloyd's] Group."

The parties dispute whether the forum selection clause applies retroactively to services performed by Lloyd's during the period of time at issue in this case (before Lloyd's entered into the Request for Survey agreement with Quail).  Quail argues that the sweeping language *at any time* counsels in favor of retroactive application.  However, the Court does not address this argument because it finds that the phrase *to the Client* is ultimately fatal to Lloyd's position.  The forum selection clause in the agreement cannot apply to services performed for SeaHawk before the agreement was entered into because Quail did not become a client of Lloyd's until the agreement was signed, which took place after Lloyd's performed the services for SeaHawk which are the subject of Quail's claims.  Accordingly, the Court holds that Quail is not bound to litigate its claims in English courts based on the forum selection clause in the Request for Survey contract.

### 2. Direct Benefit Estoppel

Lloyd's also argues that under the theory of direct benefit estoppel Quail cannot seek to predicate liability on Lloyd's internal rules and simultaneously object to the rules' forum selection clause.  Lloyd's performed classification services for the *Pacific* pursuant to agreements between Lloyd's and SeaHawk which incorporated Lloyd's rules and regulations,

and those rules contain a forum selection clause mandating that disputes be settled before English courts and under English law.

"Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th Cir. 2003). "Direct benefits estoppel applies when a nonsignatory knowingly exploits the agreement containing" the adverse clause. *Id.* at 361-62 (quotations omitted). This theory has been applied to enforce forum selection clauses against nonsignatories. *See Compana LLC v. Mondial Assistance SAS*, No. 3:07-CV-1293-Dm, 2008 WL 190522, 2008 U.S. Dist. LEXIS 4693 (N.D. Tex. Jan. 23, 2008).

The Court finds that there is sufficient authority to bind Quail to the forum selection clause contained in Lloyd's rules and regulations. Although the Eleventh Circuit has never held that a nonsignatory can be bound to a forum selection clause under an estoppel theory, it has recognized that equitable estoppel can bind nonsignatories in the arbitration context. *See Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). Furthermore, two other courts of appeals have bound nonsignatories to forum selection clauses in factual circumstances materially indistinguishable from those present here. *See Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514 (5th Cir. 2006); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349 (2d Cir. 1999). This Court has also held that, as a general matter, equitable estoppel does not permit a party to benefit from the terms of a contract while simultaneously avoiding its burdens. *Regent Seven Seas Cruises, Inc. v. Rolls Royce, PLC*, No. 06-22539-CIV, 2007 WL 601992, at *9, 2007 U.S. Dist LEXIS 11999, at *30 (S.D. Fla. Feb. 21, 2007) (citing *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.* 659 F.2d 836, 838-39 (7th Cir. 1981)).

In order to maintain its claims against Lloyd's Quail must allege that it foreseeably relied on Lloyd's representations when it decided to purchase the *Pacific*. This is because, in suits against a classification society, "a plaintiff claiming negligent misrepresentation must be a person, or a member of a limited group of persons, for whose benefit and guidance the defendant either intends to supply the information or knows that the recipient intends to supply it." *Otto Candies v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 535 (5th Cir. 2003) (quotations omitted). Quail must assert that it was a foreseeable beneficiary of Lloyd's services. In fact, Quail alleges in detail, citing to numerous, specific rules, the process by which Lloyd's evaluates vessels and

states that Lloyd's representations are relied on by people in the maritime community who are purchasing vessels, including Quail. Quail alleges that Lloyd's failed to impose conditions of class when according to Lloyd's rules it had an obligation to do so. Quail alleges that it purchased the *Pacific* in reliance on Lloyd's misleading survey. Quail argues that its pleadings are sufficient to state a claim against Lloyd's because of the allegations that Lloyd's failed to impose conditions of class, did not follow "mandatory requirements," and failed to conduct a "lightweight survey" which was required under the rules. It is clear from the complaint that Quail relied on Lloyd's representations, the fact that Lloyd's services were conducted pursuant to the rules, and that but for Lloyd's services Quail would not have purchased the *Pacific*.

Quail argues that it is not estopped from denying the forum selection clause because (1) its claims are not based on Lloyd's rules since the claims sound in tort, not contract and that (2) it received no benefit from the rules. Both of Quail's arguments were rejected by the Fifth Circuit in *Hellenic*. *Hellenic* found that direct-benefit estoppel was applicable because the plaintiff's claim was based on the defendant's failure to follow its own rules in classifying the plaintiff's vessel. 646 F.3d at 519. Moreover, the Fifth Circuit found the plaintiff's argument that the defendant conferred no direct benefit upon the plaintiff unpersuasive in light of the plaintiff's reliance on the defendant's rules in the complaint. *Hellenic*'s reasoning applies with equal force to Quail's allegations and argument in this case.

Accordingly, the Court follows *Hellenic* and *Tencara* and holds that Quail is bound by the forum selection clause in Lloyd's rules and regulations, incorporated into SeaHawk's agreement with Lloyd's. At the hearing, however, Quail suggested for the first time that Lloyd's forum selection clause is unconscionable in this situation because a classification society owes no duty to third parties—and Quail would therefore have no remedy for any misconduct by Lloyd's—under English law. The Court, of course, has no special knowledge of English law and cannot decide this issue on the current record. Therefore, the Court finds that Quail is bound by the forum selection clause in Lloyd's rules and regulations under a direct benefit estoppel theory, but will permit Quail to raise the issue of unconscionability in its amended complaint.

### B. Securities Act Claims

Count I of the complaint alleges securities fraud against all defendants. SeaHawk, Spinelli, and CVC move to dismiss this claim for lack of subject matter jurisdiction and Lloyd's moves to dismiss for failure to state a cause. Though as a general proposition the securities act

7

does not apply extraterritorially, courts have crafted limited exceptions when the effects or conduct connected with a transaction is felt or occurs within the United States. Quail argues that there was sufficient fraudulent conduct in the United States to establish federal question jurisdiction for its securities fraud claim.

The allegations in the complaint, however, are insufficient to establish subject matter jurisdiction and lack the specificity required to state a claim for securities fraud. The Court will therefore dismiss the securities act claims without prejudice and permit Quail to file an amended complaint. As explained more fully on the record during the hearing, the amended complaint must specify which particular defendants made fraudulent misrepresentations, the particular statements made, and where and when such statements were made, in order for the Court to determine the adequacy of the allegations for either jurisdictional purposes or in determining whether they state a claim upon which relief may be granted.

The Courts further holds that in light of the Eleventh Circuit's adopting a similar standard in a RICO case, *Liquidation Comm'n of Banco Intercontinental, S.A. v. Alvarez Renta*, 530 F.3d 1339, 1352 (11th Cir. 2008), Quail should allege a securities act violation under the more restrictive "conduct test" articulated by the Second Circuit in *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir. 1975) and subsequent cases.[2]

### C. Maritime Tort Claims

For the reasons stated on the record during the hearing, the Court also finds that the maritime claims are insufficient to establish subject matter jurisdiction, or, in the case of the recklessness claim, to state a cause of action, and will dismiss these claims. The state law claims will also be dismissed pursuant to 28 U.S.C. § 1367(c)(3). However, because this dismissal is

---

[2] There is a circuit split on the level of domestic conduct necessary to establish jurisdiction for securities fraud claims brought by for foreign investors in foreign stock. The Second, Fifth, and Seventh Circuits have adopted a restrictive approach, requiring that the domestic conduct be material to the fraud's success, while the Ninth, Eighth, and Third Circuits have adopted a more lenient standard which requires only some "significant" domestic conduct. *Compare, e.g., Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 667 (7th Cir. 1998) *with Continental Grain (Australia) Pty., Ltd. v. Pacific Oilseeds, Inc.*, 592 F.2d 409, 421 (8th Cir. 1979). The D.C. Circuit reluctantly adopted the Second Circuit's approach after doubting that the securities act was intended to have any extraterritorial reach. *Zoelsch v. Arthur Andersen & Co.*, 824 F.2d 27, 32 (D.C. Cir. 1987). The Supreme Court may resolve this split in authority in *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), *cert. granted*, 130 S. Ct. 783 (2009) (No. 08-1191), which was recently argued and is awaiting determination.

without prejudice, it is necessary to address the other threshold defenses which the defendants assert.

### D. Personal Jurisdiction over CVC

CVC moves to dismiss for lack of personal jurisdiction but Quail argues that CVC has waived this defense. The background of this issue is as follows: At the outset of this litigation, CVC filed a motion to strike the notice of return service and argued in the motion that it was not properly served. The parties fully briefed the issue and the Court held a hearing to determine whether CVC was properly served under Florida Statute Section 48.081(2). The Court found that service was proper because Quail served Alltour of American, Inc., who was an agent transacting business for CVC in Florida. The Court construed CVC's motion to strike as a motion to dismiss under Federal Rule of Civil Procedure 12(b) and denied it.

The motion to strike stated that CVC "makes this limited appearance with reservation of all rights and defenses, including but not limited to jurisdictional defenses to file this Motion to Strike Return of Service on CVC . . . ." (Doc. 19, filed November 20, 2009). CVC now argues that it preserved the right to assert the lack of personal jurisdiction in its motion to strike. The Court disagrees. Federal Rule of Civil Procedure 12(g) and (h) prohibit piecemeal adjudication of threshold defenses.

Rule 12(h)(1) provides that:

A party waives any defense listed in Rule 12(b)(2)-(5) by:

(A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or

(B) failing to either:

(i) make it by motion under this rule; or

(ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

A party who makes a motion under Rule 12(b)(2)-(5) may not make another motion under Rule 12(b)(2)-(5) raising a defense or objection that was available to the party but omitted from its earlier motion. FED. R. CIV. P. 12(g)(2). A defendant can therefore preserve its right to challenge personal jurisdiction by moving to dismiss for lack of personal jurisdiction in its initial motion or by averring no personal jurisdiction in answering the complaint. CVC did neither.

CVC's motion to strike did not include a motion dismiss for lack of personal jurisdiction. By its own terms it was a challenge to service of process together with an attempt, albeit an unsuccessful one, to reserve jurisdictional defenses. As the Court previously ruled, CVC filed a

motion to dismiss for improper service but mislabeled it. CVC did not object when, at the January 5, 2010 hearing on service of process, the Court characterized its motion to strike as a motion for insufficient service.

The Court holds that because CVC should have moved to dismiss for lack of personal jurisdiction in its pre-answer motion to dismiss for improper service, it has now waived that defense. *See Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008) ("Simply put, a litigant must cite each separate Rule 12(b) defense in the pre-answer motion or if no pre-answer motion is filed, then in the responsive pleading."); FED. R. CIV. P. 12, Advisory Committee Notes to 1966 Amendment ("A party who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses he then has . . . . The waiver [in subdivision (h)] reinforces the policy of subdivision (g) forbidding successive motions.").

### E. Failure to Join an Indispensible Party

SeaHawk and Spinelli also argue that this case should be dismissed for failure to join an indispensible party. They argue that Flameck must be joined but cannot be because Quail is required to submit any claims against Flameck to arbitration. Under Federal Rule of Civil Procedure 19(a)(1):

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If a district court finds that a party must be joined under Rule 19(a), it weighs the factors enumerated in Rule 19(b) and determines in its discretion whether to dismiss the lawsuit. "The burden is on the moving parties to establish indispensability." *Ship Constr. & Funding Servs. (USA), Inc. v. Star Cruises PLC*, 174 F. Supp. 2d 1320, 1325 (S.D. Fla. 2001).

The only party who is seeking relief in this case is Quail. The defendants assert that Flameck is indispensible because they might indemnify Flameck. Even is so, that does not limit

10

the Court's ability to accord complete relief *among existing parties* here.  *See Herpich v. Wallace*, 430 F.2d 792, 817 (5th Cir. 1970) ("Rule 19 . . . was not meant to unsettle the well-established authority to the effect that joint tortfeasors or coconspirators are not persons whose absence from a case will result in dismissal for non-joinder.").

The defendants' argument is based almost exclusively on language from *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999), which found that dismissal for failure to join an indispensible party was warranted when the plaintiff had to prove the conduct of a non-party in order to prevail on its anti-trust claim.  One district court, in rejecting an attempt to import the reasoning of *Laker Airways* into a routine joint tortfeasor situation, explained that

> In *Laker Airways*, the Eleventh Circuit determined that the interests of the party not joined, ACL, were "more significant than those of routine joint tortfeasor," because proof of the plaintiff's antitrust claims required plaintiff to demonstrate that ACL did not act in an independent manner.  This case, by contrast, does not involve an antitrust claim, and Plaintiffs' Lanham Act and FUDTPA claims do not require proof of NAM's activities.

*Axiom Worldwide, Inc. v. Becerra*, No. 8:08-cv-1918-T-27TBM, 2009 WL 1347398, at *4, 2009 U.S. Dist. LEXIS 40214, at *12 (M.D. Fla. May 12, 2009) (citation omitted).  Here too, Quail need not prove Flameck's actions to succeed in its tort claims against the other defendants.  Accordingly, the defendants have failed to show why Flameck must be joined in order for the Court to accord relief among existing parties under Rule 19(a)(1)(A).  The Court need not consider whether Flameck must be joined under Rule 19(a)(1)(B) because Flameck has not claimed an interest in this litigation.  The Court holds that Flameck is not a party that must be joined under Rule 19(a) and will deny the motion to dismiss for failure to join an indispensible party.

## CONCLUSION

For the reasons stated above and those stated on the record in open court during the April 8, 2010 hearing, it is ORDERED AND ADJUDGED that the motions to dismiss are GRANTED IN PART AND DENIED IN PART and it is ORDERED as follows:

1. CVC's motion to dismiss for lack of personal jurisdiction is denied.

2. CVC, Spinelli, and SeaHawk's motion to dismiss for failure to join an indispensible party under Rule 19 is denied.

3. Quail is not bound by the forum selection clause in its Request for Survey agreement with Lloyd's, but Quail is bound by forum selection clause in Lloyd's rules and regulations though direct benefit estoppel. However, Quail may raise the issue of the clause's unconscionability in its amended complaint.

4. The securities act and maritime claims are dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted with leave to amend; the pendent state law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

5. Quail may file an amended complaint on or before May 3, 2010.

DONE AND ORDERED in Chambers, at Miami, Florida, April 14, 2010.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record