UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23248-CIV-HUCK/O'SULLIVAN

QUAIL CRUISES SHIP
MANAGEMENT LTD.,

    Plaintiff,

v.

AGENCIA DE VIAGENS
CVC LIMITADA, ET AL,

    Defendant.
_____/

**<u>ORDER</u>**

THIS CAUSE is before the Court by Order of Reference from U.S. District Judge Paul C. Huck. Pursuant to such reference, the Court has received defendant Agencia de Viagens CVC Limitada, et al.'s Motion for Disqualification of Plaintiff's Counsel [DE 89] and plaintiff Quail Cruises Ship Management Ltd.'s Response [DE 136-1]. The Court also held a hearing on the matter on June 3, 2010. After due consideration, Agencia de Viagens CVC Limitada, et al.'s Motion for Disqualification of Plaintiff's Counsel is DENIED.

<u>FACTUAL BACKGROUND</u>

Defendant's motion arises from a claim that the law firm of Holland & Knight, LLP ("HK") and a partner at the firm, George Mencio ("Mencio"), represented both the buyers and sellers in the underlying sales transaction of the M/V Pacific ("the vessel"). Two separate sales transactions involving the vessel lead to the Defendants' claim that there is a conflict of interest. The first occurred in 2005. CVC entered into an agreement for the purchase of the vessel with Pullmantur Shipping

("Pullmantur"), a company that is affiliated with the Pullmantur Group, a longtime client of HK. CVC claims that only HK, and no other lawyers, represented it in that transaction. According to Plaintiff, however, Mencio, along with various Brazilian attorneys, represented Pullmantur, and a different Brazilian law firm represented CVC.

The second transaction occurred around March 25, 2008 where Plaintiff negotiated to purchase the vessel from Templeton International, Inc. ("Templeton"). Johan Tyren contacted Mencio for assistance in connection with documenting the possible transfer of the vessel. It appears from statements made at the hearing and Mencio's affidavit, that Mr. Tyren is not affiliated with any of the parties involved in this litigation, but with Pullmantur. [136-2 at3]. Mencio claims that he was first led to believe that CVC was the client that he was asked to represent, and thus he sent an engagement letter to CVC on April 1. The engagement letter required that the letter be signed and returned to HK; otherwise HK could not represent CVC. Several days later, Mencio was asked to limit his representation to Templeton, and to send his engagement letter to Templeton International, c/o SeaHawk, Attn: Mr. Rodolfo Spinelli. Mencio sent this letter on April 4. In both letters, Mencio thanked CVC and Templeton for retaining HK in connection with the sale of the vessel. The engagement letter to Templeton was returned and signed.  Plaintiff points out that Defendant SeaHawk merely received the letter in its capacity as the vessel's manager, and Defendant Spinelli executed the letter solely on behalf of Templeton. Defendants claim that they countersigned and faxed the CVC engagement letter back to HK as well. HK, however, never received the letter. The fax number to which the Defendants claim to have sent the letter is not an HK line. Also, HK's terms attached to its engagement letter state that its representation of the named client does not extend to parent companies, subsidiaries, or other affiliates. [DE 136-2 at 25].  Defendants, however, point to

2

language in the letter stating, "our engagement began on March 28, 2008" as proof that there was an attorney-client relationship between CVC and Mencio. [DE 136-2 at 23].

The sale of the vessel was through the sale of stock of Templeton. The stock was valued on the basis of the projected revenues to be derived from the vessel. The buyer, Quail, was made up of former Pullmantur Group executives well known to Mencio. A formal stock purchase agreement through Flameck International S.A. ("Flameck"), a Uruguay company that CVC controlled and that held Templeton's shares, was reached in June 2008 for the acquisition of all of Templeton's issued and outstanding stock. In connection with the preparation and negotiation of the documentation for the sale of Templeton's shares, Price Waterhouse Coopers of Uruguay represented Flameck. Defendants claim that HK represented Defendants Patriani, CVC, Spinelli, and SeaHawk in the negotiations and preparation of the Share Purchase Agreement between Plaintiff and Non-Party Flameck. However, the Plaintiff asserts that two Brazilian law firms, one of which represented CVC in the Pullmantur transaction, represented the Defendants.

During the drafting of the purchase agreement for the sale of the Templeton shares, HK received suggestions from Quail's Miguel Mounir. The suggestions were incorporated into the agreement without objection from anyone. Mencio received no suggestions from Defendants as to how to document the agreement. Mencio was never privy to any discussions that took place between the representatives of Quail, CVC, and SeaHawk about the condition of the vessel.

In June 2008, Quail purchased the vessel. Mencio sent a bill to Templeton International, c/o/ SeaHawk, Attn: Mr. Rodolfo Spinelli in accordance with the address on the engagement letter. Spinelli then directed HK to contact Valter Patriani from CVC, who also did not pay the bill. Quail eventually paid. CVC claims that it paid for HK's services through Quail by giving Quail a credit for

HK's fees on their balance sheets. As proof of an attorney-client relationship, CVC points out that Mencio contacted Valter Patriani directly, rather than through an attorney. Moreover, Mencio wrote a letter to Patriani stating, "If I remember correctly, you were satisfied with our work and the invoice is in accordance to what we had agreed to when we were hired." [DE 89-2 at 21].

In July 2009, Quail, through its Spanish counsel, made a written demand to CVC for damages in connection with the sale of the Templeton shares by Flameck arising from the misrepresentations made in connection with the condition of the vessel. CVC responded that it was not linked with Flameck in any way. [DE 136-2 at 31]. In August 2009, attorney Michael Moore ("Moore") contacted Mencio and told him he represented CVC and SeaHawk in their dispute with Quail and was seeking information. Mencio told Moore that he was preparing to file a lawsuit against the Defendants. At some point thereafter, Moore informed Mencio that his clients thought Mencio should be disqualified because Mencio had a conflict of interest, as he represented them in the prior negotiations. HK tried to explain to Moore that CVC was never a client of HK. Moore produced a countersigned version of the engagement letter that HK sent to CVC as proof of Mencio's representation. Moore eventually conceded that the fax number on the engagement letter does not show that the letter was ever sent to HK, but still claimed that it was signed. Moore also required proof that it was Quail who paid HK. Mencio provided the wire transfer information to confirm this.

ANALYSIS

"Disqualification of a party's chosen counsel is an extraordinary remedy and should be resorted to sparingly." *Manning v. Cooper*, 981 So.2d 668, 670 (Fla. 4th DCA 2008); *Singer Island Ltd. v. Budget Constr. Co.,* 714 So.2d 651, 652 (Fla. 4th DCA 1998). "The party moving to disqualify counsel bears the burden of proving the grounds for disqualification." *In re BellSouth Corp.,* 334 F.3d

941, 961 (11th Cir. 2003). "Because a party is presumptively entitled to the counsel of his choice, the right may be overridden only if 'compelling reasons' exist." *Id*. (quoting *Texas Catastrophe Property Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992). Pursuant to Florida law, a movant must establish 1) the existence of a prior attorney-client relationship, and 2) that the matters in the pending suit are substantially related to the previous matter. *Shivers v. Int'l Bd. Of Elc. Workers Local Union 349*, 262 F. Appx. 121, 126 (11th Cir. 2008); *see also State Farm Mut. Auto. Ins. Co. v. K.A.T., et al.,* 575 So.2d 630, 633-34 (Fla. 1991).

Defendants claim that HK is conflicted pursuant to Fla. Bar Reg. 4-1.9, "Representation of Interests Adverse to Former Client," which expressly prohibits a lawyer from representing a client with an adverse interest to his former client. Defendants contend that they had a prior attorney-client relationship with Plaintiff, and that the matters in this lawsuit are substantially related to the sale of the vessel. Plaintiff, however, contends that Defendants' Motion fails for the following three reasons: 1) Defendants fail to meet their burden of establishing that an attorney-client relationship existed; 2) Defendants fail to offer any proof in support of their Motion; and 3) Defendants waived their right to seek disqualification. The Court agrees with Plaintiff on all arguments, and each will be discussed in turn.

Defendants argue that the engagement letter to CVC, the letter that accompanied the invoice to Patriani, and the payment arrangement in which CVC credited Quail on its balance sheets all prove the existence of a prior attorney-client relationship. Regarding the second prong of the test, Defendants claim that the matter needs to only be "akin to the present action in a way that a reasonable person would understand as important to the issues involved." *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir. 1981), *disavowed on other ground by Gibbs v. Paluk*, 742

5

F.2d 181, 183 (5th Cir. 1984). Defendants argue that HK's representation in the prior negotiations contains the exact subject matter as the instant litigation.

Florida law requires a lawyer being charged with an attorney-client relationship to know or have reason to know that the putative client sought to establish the relationship. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1282 (11th Cir. 2004). The test Florida courts use to determine whether a lawyer-client relationship exists in the absence of a formal retainer "is a subjective one and 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice.' However, '[t]his subjective belief must . . . be a reasonable one.'" *Id.* at 1281 (quoting *Bartholomew v. Bartholomew*, 611 So.2d 85, 86 (Fla. 2d DCA (1992)).

Here, CVC rejected HK's proposed engagement. [DE 136-2 at 3]. HK was requested to represent Templeton instead, and Mencio had no reason to know that CVC sought to establish a relationship with him or his firm. When confronted with the countersigned engagement letter from CVC, Mencio remained absolute that the letter was never received by himself or any others at HK. While the CVC letter contains a printed fax banner at the bottom of each page, the banner only stated that "CVC-Directoria" received the letter at 4:00pm on April 4, 2008 and the fax itself consisted on seven pages. [DE 136-1 at 11-12]. Nothing indicates that the letter was executed and faxed to HK in April 2008. In fact, the only evidence regarding receipt of the letter is Mencio's sworn statements in his affidavit that deny having ever received it. [DE 136-2 at 3].

Furthermore, there is no evidence that a consultation ever took place. "That an actual consultation with a lawyer is required before a putative client can develop a reasonable subjective

belief in the relationship is reflected in the Florida Evidence Code's definition of a 'client' as one 'who *consults* a lawyer with the purpose of obtaining legal services or who is rendered services by a lawyer.'" *Jackson*, 372 F.3d at 1281 n.29. The Defendants have not produced evidence beyond a few words in the engagement letter that a consultation ever occurred between CVC and HK. The only evidence within the record, Mencio's affidavit, contradicts the notion that a consultation took place. Furthermore, page one of HK's terms of engagement letter with Templeton states that the client relationship is with Templeton only, and not with its parent, subsidiaries or affiliates. [DE 136-2 at 17]. This is in accordance with the comments to Florida Legal Ethics Rule 4-1.13, which state that a lawyer who represents a corporation is ordinarily not presumed to also represent an affiliate of that organization. *See also Estate of Jones v. Beverly Health and Rehab. Servs., Inc.*, 68 F. Supp. 2d 1304, 1309 (N.D. Fla. 1999) ("Generally, an attorney is not presumed to also represent an organization such as a corporate parent or subsidiary solely by virtue of having represented the client.").

Florida courts recognize "that the test for an attorney-client relationship 'is a subjective one and hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice. However, this subjective belief must ... be a reasonable one.'" *Mansur v. Podhurst Orseck, P.A.*, 994 So.2d 435, 438 (Fla. 3d DCA 2008) (quoting *The Fla. Bar v. Beach*, 675 So.2d 106, 109 (Fla. 1996). "[A] party's subjective 'thoughts' that an attorney-client relationship exists, in the absence of facts clearly showing such a belief is reasonable is insufficient to support disqualification." *Fenik v. One Water Pl.,* 2007 WL 527997, at *5. It would appear, based on the facts presented, that CVC could not have a reasonable belief that it had retained HK.

Furthermore, "[a]n attorney-client relationship cannot be formed when the attorney has literally no basis to know that a putative client thinks that lawyer has been retained." *Jackson,* 372 F.3d at 1282. "Florida law requires that the lawyer being charged with the attorney-client relationship to know or have reason to know that the putative client has sought a relationship." *Id.* at 1281 n.31. After CVC failed to ever return the engagement letter, Mencio had no reason to know that CVC sought to establish an attorney-client relationship. As such, HK's representation was limited to Templeton and did not include any entities affiliated with Templeton, per the engagement agreement. Thus, Mencio would have no reason to believe that a relationship was established with CVC.

Regarding payment for HK's services, Plaintiff states that HK sent an invoice to Templeton, c/o SeaHawk, in accordance with the engagement letter, and having received no payment, eventually followed up with Quail, and received payment from Quail. Mencio claims that he did not know of any arrangement between CVC and Quail regarding a credit from CVC to use for payment. Even if this payment arrangement was relevant, although Plaintiff claims otherwise, any information regarding it was outside of Mencio and HK's knowledge. Furthermore, the fact that a company paid attorney's fees is not necessarily a determining factor of whether an attorney-client relationship existed, as it is a common occurrence in sales transactions to designate a party to pay the fees.

Plaintiff also argues that Defendants' Motion should be denied because it is unverified and contains no supporting affidavits. In *Bon-Secours-Maria Manor Nursing Car Ctr., Inc. v. Seaman*, the court quashed the order disqualifying counsel where the trial court relied on an unsworn motion and argument as the only factual basis for disqualification without testimony, affidavits, or other evidence. 959 So.2d 774, 780 (Fla. 2d DCA 2007). In the present case, the Defendants had nearly nine months to investigate their allegations and present evidence. This was ample time to have attained

the necessary affidavits. The reason offered by Defendant's counsel at the hearing, that Defendant's Brazilian tax advisors told them not to submit affidavits, is not a sufficient basis for overcoming this requirement.

Furthermore, failure to make a timely objection regarding opposing counsel may result in waiver. *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988). The negotiations for the Templeton transaction took place from April 2008 through June 2008. The Defendants were provided with detailed notice of the impending litigation on August 5, 2009 and with Plaintiff's Complaint by email on October 26, 2009. Yet, Defendants waited until April 22, 2010 before moving to disqualify.

Plaintiff argues that Defendants waived their right to seek disqualification and do so now because they know the hardship that obtaining new counsel this late in the litigation would cause. Plaintiff's attorneys have been working on this case since August 2009 when Defendants were provided notice about the impending litigation, and it has been two years since the negotiations at the basis of this action took place. HK has defended many complex motions and expended over 1,200 working hours on this case.

The Preamble to the Florida Rules of Professional Conduct warns parties not to use disqualification motions as procedural weapons. *See also Manning v. Cooper*, 981 So.2d 668, 670 (Fla. 4th DCA 2008) (per curiam) ("Motions for disqualification are generally viewed with skepticism because disqualification of counsel impinges on a party's right to employ a lawyer of choice, and such motions are often interposed for tactical purposes."). "A motion to disqualify should be made with reasonable promptness after the party discovers the facts which lead to the motion." *Transmark,*

*U.S.A., Inc. v. State, Dept. of Ins.*, 631 So.2d 1112, 1116 (Fla. 1st DCA 1994); *Balda v. Sorchych,* 616 So.2d 1114, 1116 (Fla. 5th DCA 1993). In C*oncerned Parents of Jordan Park v. Housing Authority of City of St. Petersburg, Fla.*, the Defendant waited five months after the case was filed to move for disqualification of opposing counsel, despite knowing the attorneys' identities for "several months" before the filing of the action. 934 F.Supp. 406, 408 (M.D.Fla.1996). The court found that the Defendant had waived its right to move for disqualification. Similarly, Defendants in the instant case had nearly three months warning about the impending litigation and that HK represented Quail. Yet, Defendants waited six months after the Complaint was filed to move for disqualification. Therefore, Defendants have waived their right to seek disqualification. Accordingly, it is hereby

ORDERED that the Agencia de Viagens CVC Limitada, et al.'s Motion for Disqualification of Plaintiff's Counsel is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida this 23rd day of July, 2010.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE