UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 09-23248-CIV-HUCK/O'SULLIVAN

QUAIL CRUISES SHIP MANAGEMENT
LTD.,

    Plaintiff,

v.

AGENCIA DE VIAGENS CVC TUR
LIMITADA, et al.,

    Defendants.
_____/

## ORDER ON MOTIONS TO DISMISS AMENDED COMPLAINT

This case, arising out a foreign corporation's purchase of another foreign corporation's stock from its foreign owner in order to acquire a foreign-flagged vessel operating in foreign waters, is before the Court on three motions to dismiss the Plaintiff's Amended Complaint. The Court has considered the motions and associated briefing, and is otherwise duly advised. Because the Plaintiff has failed to establish a basis for subject matter jurisdiction, the Court will dismiss the Amended Complaint.

## BACKGROUND

The Plaintiff, Quail Cruises Ship Management Ltd., is a Bahamian corporation whose principal place of business is in Spain. Quail operates cruises in the Mediterranean, Adriatic, West Atlantic, and Carribean. Quail alleges that the Defendants fraudulently induced it into purchasing the *M/V Pacific* via a stock purchase of Templeton International Inc., a Bahamian corporation whose principle asset is the *Pacific*. Quail purchased the Templeton stock from Flameck International, S.A., a Uruguayan corporation. Flameck is not a party to this action because the share purchase agreement contains a mandatory arbitration clause.

Quail claims the Defendants induced it to purchase the *Pacific* by intentionally misrepresenting the vessel's condition and systematically concealing its defects. Defendant Agencia de Viagens CVC Tur Limitada (CVC) is a Brazilian corporation and prior owner of the *Pacific*. Defendant Valter Patriani, CVC's president, is also a resident

of Brazil. Defendant SeaHawk North America, LLC, is a Florida LLC, and its president, Defendant Rodolfo Spinelli, also resides in Florida. Finally, Defendant Lloyd's Register North America is a Delaware corporation.

The facts surrounding this transaction are recounted at greater length in an earlier order dismissing Quail's first complaint for lack of subject matter jurisdiction and failure to state a claim. *Quail Cruises Ship Mgmt. Ltd. v. Agencia De Viagens Cvc Tur Limitada*, No. 09-23248, 2010 WL 1524313 (S.D. Fla. Apr. 14, 2010). In its previous order, the Court dismissed the complaint on several grounds. The Court held that Quail's claims against Lloyd's were governed by a binding forum selection clause under the theory of direct benefit estoppel. However, at oral argument Quail claimed for the time that the clause is unconscionable. The Court then permitted Quail to file an amended complaint raising that issue. The Court also dismissed the securities fraud claims and maritime claims, finding that it lacked subject matter jurisdiction and that the claims failed to state a cause of action. As there are foreign parties on both sides of this suit, diversity jurisdiction is unavailable. *U.S. Motors v. GM Eur.*, 551 F.3d 420, 423-24 (6th Cir. 2008). Finally, the Court dismissed the common law claims because, without securities fraud or maritime claims, or diversity jurisdiction, no basis for supplemental jurisdiction remained.

The Amended Complaint alleges securities fraud under Section 10(b) of the Securities and Exchange Act of 1934, maritime fraud in the inducement, maritime recklessness, and common law claims for civil conspiracy, negligence and negligent misrepresentation, fraud in the inducement, and breach of fiduciary duty. CVC, Patriani, SeaHawk, and Spinelli move to dismiss the Amended Complaint for lack of subject matter jurisdiction. Patriani also moves to dismiss for lack of personal jurisdiction. Finally, Lloyd's moves to dismiss pursuant to a forum selection clause requiring suit in England.[1] Although the allegations in the Amended Complaint contain slightly greater

---

[1] Lloyd's also moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. Lloyd's has taken the position that Quail's securities fraud and maritime claims are not within this Court's jurisdiction or do not state a cause of action. However the Court, in order to have the benefit of the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), instructed Lloyd's to limit its briefing to the issue of the forum selection clause's unconscionability.

2

detail than Quail's initial complaint, the contours of the material allegations are unchanged and the Amended Complaint is also subject to dismissal.

## **SECURITIES FRAUD CLAIMS**

In dismissing Quail's first complaint, the Court noted a circuit split on the issue of the level of domestic conduct in foreign securities transactions sufficient to invoke federal subject matter jurisdiction over securities fraud claims. *Quail Cruises*, 2010 WL 1524313, at *6 n.2. The Supreme Court resolved this split in *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), by rejecting the jurisdictional tests previously employed by the courts of appeals. *Morrison* retired the "conduct" and "effects" tests previously used by lower courts for determining the extraterritorial application of Section 10(b) of the Securities Exchange Act of 1934. In so doing, the Supreme Court declined to give the securities act any extraterritorial effect in light of the judicial presumption against the extraterritorial application of a federal statute.

Specifically, *Morrison* held that fraud in connection with the purchase of stock in an Australian bank by Australian investors was not actionable under Section 10(b). Adopting what it described as a "transactional test," *Morrison* construed Section 10(b) to reach "the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." 130 S. Ct. at 2888.

*Morrison* also held that the issue of extraterritoriality is properly considered a merits issue under Rule 12(b)(6), not a question of subject matter jurisdiction under Rule 12(b)(1). Although the Supreme Court decided *Morrison* after the Defendants filed their motion to dismiss the Amended Complaint, both sides subsequently briefed the impact of *Morrison* on Quail's securities fraud claim. Post-*Morrison*, a securities fraud plaintiff must allege the purchase or sale of a security listed on an American exchange or the purchase or sale of a security in the United States. As Quail's Amended Complaint contains neither allegation, the securities fraud count will be dismissed.

Quail argues that its allegations satisfy the second prong of *Morrison*'s transaction test because Quail purchased stock in the United States. According to the Amended Complaint: "The stock transfer was made pursuant to an agreement subject to Florida law, and documentation required for the transfer of the stock was sent by means

of interstate commerce into this District, as the parties intended the closing to occur in this District." Quail argues that in light of this allegation the Court should hold that the purchase and sale of the securities occurred in the United States.

The Amended Complaint does not allege that the closing actually occurred in the United States but merely that the parties so intended. Rather than specifically singling out the United States itself as the place for closing the transaction, the agreement designated the Miami offices of Holland & Knight LLP, which served as counsel to one of the parties, as the place of closing. Moreover, the share purchase agreement was signed by the president of Flameck and a representative of Quail. None of the Defendants were signatories to the agreement and, other than Quail's conclusory allegation, there is no evidence that any of the Defendants intended the closing to occur in the United States. The agreement itself was not signed in the United States but was executed in duplicate, apparently signed in Quail and Flameck's home offices in Spain and Uruguay respectively. Furthermore, the agreement explicitly requires that any notices, consents, waivers, or other communications pursuant to the agreement be in writing and sent and delivered, if addressed to the seller, to Flameck's office in Uruguay or, if addressed to the buyer, to Quail's office in Spain.

The Defendants argue that the purchase did not occur in the United States merely because the parties intended the transaction to close in Holland & Knight's Miami law office and documents associated with the transaction were sent into that office. As *Morrison* noted, "it is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." 130 S. Ct. at 2284. It is instructive that *Morrison* relied, in part, on *EEOC v. Arabian American Oil Co.*, 499 U.S. 244 (1991) (*Aramco*), which held that Title VII did not apply extraterritorially. In *Aramco*, the plaintiff, an American citizen hired in Houston, sued under Title VII after being fired by an American company while working in Saudi Arabia. Because of the judicial presumption that Congress, absent a contrary indication in the statutory text, is ordinarily concerned with regulating domestic conduct, *Aramco* found that the plaintiff could not bring a Title VII claim for his overseas termination.

4

The Defendants also contend that *Morrison*'s central holding would be undermined if parties could elect United States securities law merely by designating the law offices of one of the parties' counsel, located in the United States, as the place of closing the transaction when the transaction otherwise has no relationship with the United States.  The Court agrees with the Defendants' analysis.  Just as Title VII concerns domestic employment, the Securities and Exchange Act concerns domestic securities transactions.  The principle takeaway from *Morrison* is that Congressional intent, not the intent of the parties, is dispositive of the application of federal securities law to foreign securities transactions.  Adopting a rule that permits the intent of parties located abroad and contracting from their home countries in a wholly off-shore transaction to apply United States securities law is inconsistent with *Morrison*.  *In re Banco Santander Sec. Optimal Litig.*, No. 09-20215, slip op. at 8-10, 2010 WL ------- (S.D. Fla. July 30, 2010) (subjective intent of parties not relevant to determine whether the plaintiff engaged in a domestic securities transaction).  The closing of the transaction in the United States, if in fact the transaction did close here, is akin to the defendant company in *Aramco* hiring the plaintiff in the United States even though the relevant conduct (the plaintiff's termination) occurred in Saudi Arabia.  In both cases the relevant conduct, the wrongful termination in *Aramco* or the purchase or sale of foreign securities here, occurred abroad and therefore is not governed by federal law.

Moreover, as mentioned above, the Defendants were not parties to the share purchase agreement and Quail fails to offer any persuasive reason why the Defendants should be bound the by Quail and Flameck's agreement that the transaction close in the United States.  Quail's securities fraud claims are therefore insufficient under *Morrison*'s transactional test because the Amended Complaint does not allege the requisite domestic transaction.  Having concluded that Quail cannot state a claim under *Morrison*, and Quail therefore lacks a federal cause of action under 28 U.S.C. § 1331, the Court will now address whether it has maritime and admiralty jurisdiction pursuant to 28 U.S.C. § 1333.

## MARITIME TORT CLAIMS

A tort claim is subject to the federal courts' maritime and admiralty jurisdiction when (1) it occurs on navigable waters or is caused by a vessel on navigable waters, (2) the incident has a potentially disrupting impact on maritime commerce, and (3) the

5

general character giving rise to the incident has a substantial relationship to traditional maritime activities. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The first-listed element is known as the location or locality test while the second and third elements comprise the connection or nexus test.

A maritime nexus exists if the general features of the incident giving rise to the plaintiff's claim are likely to disrupt commercial maritime activity. *Sisson v. Ruby*, 497 U.S. 358, 363 (1990). In other words, the incident must be one that can be seen within a class of incidents that pose more than a fanciful risk to commercial maritime activities. *Grubart*, 513 U.S. at 539. This is because the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce. *Sisson*, 497 U.S. at 366-67. Additionally, whether the general character giving rise to the incident has a substantial relationship to traditional maritime activities does not turn on "the particular circumstances of the incident, but [on] the general conduct from which the incident arose." *Id.* at 364.

Quail asserts maritime tort claims for fraud in the inducement and recklessness. Quail argues that the torts occurred on navigable waters because some misrepresentations were made aboard the vessel and the effects of the Defendants' failure to repair and properly manage the vessel were felt on board the vessel. Quail also alleged that some of the Defendants improperly painted over cement repairs on the vessel, which repairs were themselves improper, in order to fraudulently conceal the extent of the *Pacific*'s deterioration and corrosion. Quail argues that the Defendants' pre-sale conduct disrupted maritime commerce by rendering the vessel inoperable and forcing it out of service while undergoing substantial post-sale repairs. According to Quail, these alleged torts involve ship management, ship classification, and vessel repairs, all of which are traditional maritime activities.

The Defendants argue that the general activity associated with Quail's claim simply constitutes misrepresentations relating to the purchase agreement. According to the Defendants Quail does not, and cannot, assert a claim based on the Defendants' faulty repair or management of the vessel occurring before the consummation of the sale because the Defendants owed no duty to Quail with respect to their pre-sale activities.

*Locality Test*

The Court finds that Quail has not satisfied the locality test. A plaintiff's claim satisfies the locality test when the tort occurs on navigable waters. *Bunge Corp. v. Freeport Marine Repair, Inc.*, 240 F.3d 919, 924 (11th Cir. 2001). The clear weight of authority supports the proposition that fraud in connection with the sale of a vessel is deemed to occur on land where the contract is consummated. *See Wilkins v. Commercial Inv. Trust Corp.*, 153 F.3d 1273, 1275 & n.14, 1278 (11th Cir. 1998); *Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 289 (5th Cir. 1989); *Crowley Liner Servs. v. Transtainer Corp.*, No. 06-21995-CIV, 2007 WL 433352 (S.D. Fla. Feb. 6, 2007); *McAllister Towing Co., Inc. v. Thorn's Diesel Serv., Inc.*, 163 F. Supp. 2d 1329, 1334 (N.D. Ga. 2001); *Smith v. Miltof*, 198 F. Supp. 2d 492, 500 (S.D.N.Y. 2002); *Maritima Petroleo e Engenharia Ltda v. Ocean Rig IA*, 78 F. Supp. 2d 162, 172 (S.D.N.Y. 1999). *But see Exter Shipping Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1310 (N.D. Ga. 2004); *Elmwood Dry Dock & Repair v. H & A Trading Co.*, No. 93-2156, 1997 WL 781298, at *16 (E.D. La. Dec. 16, 1997). The mere allegation that in the course of negotiations the Defendants misrepresented the condition of the vessel while aboard the vessel is, of itself, insufficient to satisfy the locality test.

*Maritime Nexus Test*

The Court also finds that the general character of the circumstances giving rise to Quail's claims do not meet the maritime nexus test. Most of Quail's argument on the nexus test references the actual events and injuries that transpired and, therefore, is not consistent with the Supreme Court's teachings that the existence of a maritime nexus depends on the general character of the incident (maritime or non-maritime) giving rise to the plaintiff's tort claims, not the particular circumstances of the case.

For example, in *Sisson*, two pleasure boats collided on navigable waters. The Supreme Court declined to characterize the incident as merely relating to pleasure boats, which would lack the potential to disrupt maritime commerce and lack a substantial relationship to traditional maritime activity. Instead, the Supreme Court found that the general character of the incident created a maritime nexus because the incident involved navigation and vessels plying navigable waters must be subject to uniform rules of conduct. *Sisson*, 497 at 364-65. Viewed in this light, *Sisson* found that a collision

between two ships on navigable waters had the potential to disrupt maritime commerce and related to traditional maritime activity.

In recent case more closely resembling the present facts, this district court found that maritime claims for fraud and tortious interference with a business relationship failed to satisfy the maritime nexus. The plaintiff's claims in that case were based on the defendant's false statement that it would pay the purchase price under a contract for sale of a vessel. The court found that "the general character of the activity giving rise to the incident, fraudulent representation, was the negotiation and formation of a contract for sale of a vessel. This activity is not common, if not indispensible, maritime activity and has no connection with traditional maritime activity." *MS "Adele" Schifffahrtsgesellschaft mbH & Co. KG v. Wonderland International Corp.*, No. 10-20963, slip op. at 8 (S.D. Fla. Apr. 12, 2010). This analysis applies here with equal force because the general character of the activity giving rise to the incident is likewise fraudulent representation in the negotiation and consummation of a contract for sale of a vessel.

A plaintiff may not artificially create federal jurisdiction by creatively defining the relief sought or the claim asserted in an attempt to bring the claim within traditional maritime jurisdiction. *Cf. Guess v. Board of Medical Examiners*, 967 F.2d 998, 1005 (4th Cir. 1992); *Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (5th Cir. 1984). Quail attempts to characterize its maritime claims as arising out of the pre-sale management, repair, and classification of the *Pacific*. However, the alleged wrongful conduct is more accurately described as misrepresentations made in connection with a contract for sale of that vessel. Quail cannot invoke federal admiralty jurisdiction by recasting a fraudulent sale claim as a claim for damages to the vessel. The essence of Quail's claims is the Defendants' fraudulent concealment of the *Pacific*'s condition, not the deficient pre-sale repair work that may have resulted in that condition.

Therefore, adhering to the Supreme Court's instruction to examine the general character of the activity giving rise to the incident, the Court must conclude that the general character of the activity giving rise to this incident, construed most favorably to

Quail, is fraud in the negotiation and formation of a sale contract for a vessel.[2] The negotiation and formation of a contract for sale of a vessel is not inherently or potentially disruptive of maritime commerce, has no connection with traditional maritime activities, and does not implicate the interests giving rise to maritime jurisdiction. A contract for sale of a vessel, even if fraudulently obtained, does not concern transportation by sea, maritime shipping, maritime employment, or travel on navigable waters. *Richard Bertram & Co. v. The Yacht, Wanda*, 447 F.2d 966, 967 (5th Cir. 1971). Nor does such a sale involve conversions, repairs, maintenance, or other work upon ships at sea or docked in navigable waterways. *Alderman v. Pacific Northern Victor*, 95 F.3d 1061, 1065 (11th Cir. 1996). It is well settled that "neither contracts for construction nor for sale of a vessel are maritime in nature." *Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F.2d 848, 850 (11th Cir. 1988); *see also Richard Bertram & Co. v. The Yacht, Wanda*, 447 F.2d 966, 967 (5th Cir. 1971) (noting the "prevailing rule" that "a contract for the sale of a ship is not a maritime contract"); 1 Benedict on Admiralty, §112 (Matthew Bender 2009) ("Although never held by the Supreme Court, it has been well established by the lower courts that contracts for the sale of a vessel are non-maritime."). Quail's claims lack the required maritime nexus for admiralty jurisdiction.

## **CONCLUSION**

Quail's securities law claims do not survive *Morrison*, the maritime tort claims fail the test for admiralty jurisdiction, and there is a lack of diversity jurisdiction between the Plaintiff and the Defendants. Accordingly, the Court lacks subject matter jurisdiction over this litigation. It is therefore

ORDERED AND ADJUDGED that:

1. Because neither Quail's securities fraud nor maritime claims can serve as a basis for subject matter jurisdiction, CVC, Patriani, SeaHawk, and Spinelli's motion to dismiss for lack of subject matter jurisdiction is granted

2. Quail's pendent state common law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

---

[2] Misrepresentations relating to the purchase of foreign securities, which would similarly lack the requisite maritime nexus, might also be an accurate description of the general character of the incident.

    3.    Patriani's motion to dismiss for lack of personal jurisdiction and Lloyd's motion to dismiss for improper venue are denied as moot.

    4.    This case is dismissed without prejudice.

DONE AND ORDERED in Chambers, at Miami, Florida, August 6, 2010.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record