IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-23248-CIV-HUCK/BANDSTRA

QUAIL CRUISES SHIP MANAGEMENT,
LTD., a company incorporated under the laws
of the Bahamas,

        Plaintiff,

v.

AGENCIA DE VIAGENS CVC TUR
LIMITADA, a company incorporated under
the laws of Brazil, VALTER PATRIANI, an
individual residing in Brazil, SEAHAWK
NORTH AMERICA, LLC, a Florida
corporation, RODOLFO SPINELLI, an
individual residing in Florida, and LLOYD'S
REGISTER NORTH AMERICA, INC., a
Delaware corporation,

        Defendants.
_____/

**ORDER OF DISMISSAL AS TO DEFENDANT
LLOYD'S REGISTER NORTH AMERICA, INC.**

    THIS MATTER is before the Court upon a Request for Adjudication of its Motion to Dismiss for Improper Venue (Doc. 172) by Defendant Lloyd's Register North America ("Lloyd's Register"). Defendant requests that the Court rule on its previously filed Motion to Dismiss Amended Complaint and Supporting Memorandum of Law (Doc. 107). The Court, having considered the parties' previously-filed memoranda, the amended complaint, the pertinent portions of the record, the parties' argument at the hearing, and being otherwise duly advised, grants the Motion to Dismiss.

**BACKGROUND**

    Quail Cruises Ship Management, Ltd. ("Quail"), a Bahamian corporation, acquired the *M/V Pacific* (of *Love Boat* fame) in June 2008 through the purchase of stock of Templeton International

Inc., a corporation whose primary asset was the vessel. Templeton shares were previously held by Flameck International S.A., a Uruguayan corporation, and its parent company, Agencia de Viagens CVC Tur Limitada ("CVC"), a Brazilian corporation. The *Pacific*'s operations were coordinated by SeaHawk Inc., a Florida corporation. The stock price for the vessel was based, in part, on the inspections performed outside the United States by Lloyd's Register, a Delaware corporation with an office in Florida.

Lloyd's Register is a classification society that inspects ships to determine their seaworthiness, and identify any structural or mechanical deficiencies. If any deficiency is discovered, Lloyd's Register issues a "Condition of Class" whereby an interim certificate describes the nature of the deficiency and the due date for repair. The classification of ships, including the one performed on the *Pacific,* is done according to Lloyd's Standard Rules and Regulations for the Classification of Ships ("Classification Regulations").

Plaintiff, Quail, alleges that Defendants Seahawk and CVC misrepresented the condition of the *Pacific* by influencing Lloyd's Register to provide a favorable classification. Quail's original complaint stated that a total of 22 conditions of class were identified in early 2008. *See* Pl. Compl. (Doc. 1), ¶¶ 43, 45. In April 2008, Quail began negotiations with CVC over acquisition of the *Pacific*. According to Quail, CVC represented that all conditions of class had been remedied as of May 2008, and that the vessel was in good condition. *See id.* ¶¶ 52-53. Based on projected revenues and the condition of the vessel, Quail purchased the *Pacific* for $14,892,000.00 on June 10, 2008.

Lloyd's Register performed an unscheduled survey in August 2008. The record does not disclose what prompted this unscheduled survey. The survey indicated significant deficiencies in the *Pacific*'s condition, including findings of "significant corrosion, thinning and wastage throughout the [v]essel." *Id.* ¶ 64. These deficiencies were so extensive that, according to Quail, they must have existed prior to the previous surveys. *See id.* ¶¶ 65, 78-79, 91. After a subsequent inspection in October 2008, Lloyd's Register withdrew the *Pacific*'s Passenger Ship Safety Certificate that enabled the vessel to operate as a cruise ship under international conventions. Quail alleges that it was not alerted to, or otherwise made aware of, any deficiencies in the condition of the vessel discovered during multiple previous inspections. *See id.* ¶¶ 92-93. Quail sued CVC, Lloyd's Register, and

SeaHawk for fraud under the Securities and Exchange Act of 1934 (Count I), civil conspiracy to commit fraud in the inducement (Count II), maritime tort for fraud in the inducement (Count III), maritime tort of recklessness (Count IV), negligence and negligent misrepresentation (Count V), common law tort for fraud in the inducement (Count VI), and breach of fiduciary duty (Count VII).

Lloyd's Register moved to dismiss the complaint on the grounds of improper forum, specifically that Quail is bound by the forum selection clause that mandates that disputes be litigated in English courts. *See* Def. Mot. Dismiss (Doc. 43). First, Lloyd's Register asserted that Quail entered into a Request for Survey with Lloyd's Register in April 2009 containing a mandatory forum selection clause that required any and all disputes be adjudicated in, and under the laws of, England. Second, Lloyd's Register asserted that Quail, as a direct beneficiary of the previous classification of the *Pacific* by Lloyd's Register at the request of Templeton and SeaHawk, is bound by the forum selection clause in the contract related to these classifications. The Classification Regulations that govern all classifications by Lloyd's Register were made a part of the contract between Lloyd's Register, Templeton, and SeaHawk, and contain a mandatory forum selection clause requiring that any and all disputes be adjudicated in, and under the laws of, England. The Court previously ruled that Quail was not bound by the forum selection clause in its Request for Survey, but was bound by the forum selection clause contained in the contract for the previous classification of the *Pacific* through direct benefits estoppel. Order Mot. Dismiss (Doc. 87), at 5-7. The Court, however, granted Quail's subsequent request to amend its complaint to assert that enforcing the forum selection clause would be unconscionable, and thus unenforceable. *Id*. at 7.

Because the Court ultimately dismissed the case for lack of subject matter jurisdiction, the Court did not reach the issue of unconscionability. On July 8, 2011, the Eleventh Circuit reversed the dismissal and remanded for further proceedings. *See Quail Cruise Ship Management, Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307 (11th Cir. 2011). The Eleventh Circuit held that this Court does indeed have subject matter jurisdiction over the claims arising out of the Securities and Exchange Act, § 10(b) (codified at 15 U.S.C. § 78j(b)), and S.E.C. Rule 10b-5 (codified at 17 C.F.R. § 240.10b-5). Accordingly, Lloyd's Registry's Motion to Dismiss based on grounds of improper forum, including the unconscionability issue, is now ripe for adjudication. The issues presented by Lloyd's Register's Motion to Dismiss for improper venue are: (1) whether Quail

is retroactively bound by the forum selection clause as it relates to its Request for Survey; (2) whether Quail is bound by the forum selection clause contained in the classification contract between Lloyd's Register, Templeton, and SeaHawk through direct benefits estoppel; and (3) whether enforcement of the forum selection clause is unconscionable. As indicated above, the Court has previously ruled on issues (1) and (2) and adopts that ruling here. *See* Order Mot. Dismiss (Doc. 87), at 5-7. That leaves only issue (3), the unconscionability claim, for resolution.

## ANALYSIS

The Eleventh Circuit has held that a motion to dismiss based on the applicability of a forum selection clause that would require the parties to litigate in a foreign country is properly analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998); *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1300 n.5 (11th Cir. 2001); *Liles v. Ginn-La West End, Ltd.*, 631 F.3d 1242, 1245 (11th Cir. 2011). Lloyd's Register contends that the English courts are the exclusive venue for Quail's claims. As indicated above, under direct benefits estoppel, Quail is bound by the forum selection clause incorporated in the contract between Lloyd's Register, Templeton, and SeaHawk, and unless the clause is unconscionable.[1] For the reasons discussed below, the Court finds that enforcing the forum selection clause is not unconscionable.

---

[1] In addition to its previous analysis regarding the applicability here of direct benefits estoppel, the Court notes that *Lipcon* is instructive. The analysis of direct benefits estoppel is similar to that of third-party beneficiaries to a contract. The Eleventh Circuit noted in *Lipcon* that to "bind a non-party to a forum selection clause the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it would be bound." *Lipcon v. Underwriters at Lloyd's, London*, 148 F. 3d 1285, 1299 (11th Cir. 1998) (quoting *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (internal citations omitted). Status as a third-party beneficiary to a contract is not, however, necessary to establish the requirements that the party was "foreseeable" and "closely related" to the action. *Id.* Quail's claim against Lloyd's Register is "directly related to, if not predicated upon," Lloyd's Register's performance under its contract with Templeton and SeaHawk. *See id.* (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1279 (3rd Cir. 1996). *See also Woods v. Christensen Shipyards Ltd.*, No. 04-61432-CIV, 2005 WL 5654643 (S.D. Fla. Sept 23, 2005) (holding that a third party beneficiary is bound by a forum selection clause in a contract where it is seeking to enforce its rights under the contract).

**The Forum Selection Clause is Not Unconscionable**

Forum selection clauses "are presumptively valid where the underlying transaction is fundamentally international in character." *Lipcon*, 148 F.3d at 1295 (quoting *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1362 (2d Cir. 1993), *cert. denied*, 510 U.S. 945 (1993); *accord M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 589 (1991). This presumption of validity may, however, be overcome by a "clear showing that the clauses are unreasonable under the circumstances." *Lipcon*, 148 F.3d at 1295 (internal citations omitted). The Eleventh Circuit has elaborated on what circumstances would make a forum selection clause unconscionable. In *Lipcon v. Underwriters at Lloyd's*, the Eleventh Circuit held that a forum selection clause is unreasonable, and thus unenforceable, only when "(1) their formation was induced by fraud and overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive plaintiff of a remedy; or (4) enforcement of the provisions would contravene a strong public policy." *Lipcon*, 148 F.3d at 1292 (citing *Bremen*, 407 U.S. at 15-18; *Carnival Cruise Lines*, 499 U.S. at 594-95; *Roby*, 996 F.2d at 1363. [2]

Quail contends that the forum selection clause in this case is unreasonable for four reasons. First, Quail asserts that enforcing the forum selection clause would deprive it of a remedy against Lloyd's Register, and is thus unconscionable under the third *Bremen* factor. Pl. Am. Compl. (Doc. 90), at 62, ¶ 156. Second, Quail argues that the forum selection contravenes public policy, and is unconscionable under the fourth *Bremen* factor. Third, Quail submits that enforcing the forum selection clause would lead to an "unreasonable and unjust result of parallel proceedings in different

---

[2] Although the issue was not specifically raised by Quail, it is of note that the Eleventh Circuit in *Lipcon* held that the *Bremen* test was equally applicable to the enforcement of forum selection clauses in cases involving alleged violations of U.S. securities law. *See Lipcon*, 148 F.3d at 1291-95. Specifically, the anti-waiver provisions contained in the Securities Act of 1933 (15 U.S.C. § 77n) and the Securities Exchange Act of 1934 (15 U.S.C. § 78cc(a)) do not preclude enforcement of a forum selection clause in an international agreement. The Eleventh Circuit noted that the Supreme Court applied the *Bremen* standard to securities transactions in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974). *Lipcon*, 148 F.3d at 1292. Public policy did not preclude applying the *Bremen* standard to securities transactions and, as such, the allegation of securities fraud (Count I) does not alter the standard by which unconscionability is evaluated in the present case.

forums" thereby risking "judicial inefficiency" and "potentially competing judgments." *Id.* at 63, ¶ 162. Lastly, Quail argues that it would be unable to compel the testimony, in an English court, of witnesses located outside the United Kingdom.

Quail first contends that English law does not recognize negligent misrepresentation against a classification society as a cause of action, thereby depriving it of a remedy in an English forum.[3] Quail relies on the analysis of its expert, Simon Kverndal, QC, to support this claim. *See* Pl. Opp. Def. Mot. Dismiss (Doc. 132-1). Yet, Mr. Kverndal opines that it is "highly probable that an English court would apply the law of Florida." *Id.* at 3-4, ¶ 6. If so, this would include a claim of negligent misrepresentation.[4] In this event, Quail would have the same cause of action in an English court for negligent misrepresentation as it would in this jurisdiction. *See Otto Candies L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530 (5th Cir. 2003).

Even assuming *arguendo* that English law governs its claims, Quail fails to demonstrate that it is deprived of a remedy. Quail offers several English authorities in support of its contention that, because English law does not recognize that a classification society owes a duty to a prospective purchaser, a claim for negligent misrepresentation would automatically fail in an English forum. *See* Pl. Opp. Mot. Dismiss, Ex. A (Docs. 132-1, 132-2). It has been established, however, that a remedy is available against a classification society for fraud. The law governing claims of deceit, the English equivalent of fraud, is different from that of negligent misrepresentation with regard to the scope of duty owed to those who are not parties to the contractual undertaking. Pl. Opp. Mot. Dismiss, Ex. A (Doc. 132-1), at 3, ¶ 7. Quail does not provide any evidence that its claim of deceit against

---

[3] It is noteworthy that Quail knowingly consented to a forum selection clause in its April 16, 2009 Request for Survey agreement with Lloyd's Register EMEA that provided that any disputes "shall be subject to the exclusive jurisdiction of the English courts and will be governed by English law." *See* Kennedy Decl. (Doc 43-2), at 2, ¶ 2.

[4] Mr. Kverndal states in his opinion that, because the events giving rise to this case occurred prior to January 11, 2009, an English court would most likely decide what substantive law is applicable on the basis of Section 11 of the Private International Law (Miscellaneous Provisions) Act, 1995, c. 42, § 11(1) (Eng.) (stating that "[t]he general rule is that the applicable law is the law of the country in which the events constituting the tort or delict in question occur."). Kverndal Decl. (Doc. 132-1), at 2, ¶¶ 3-4. After reviewing the facts and issues of the present case, he concludes that the Private International Law (Miscellaneous Provisions) Act "would point to the law of Florida as the applicable law." *Id.* at 2, ¶ 4.

Lloyd's Register would categorically fail in an English court. To the contrary, the English legal experts agree that Quail may plead a reasonable claim against Lloyd's Register for fraud in rendering its classification report. A forum selection clause will not be invalidated simply where the remedies in that forum are "less favorable" than those present in this jurisdiction. *Lipcon*, 148 F.3d at 1297. Quail has failed to rebut the presumption of validity of the forum selection clause because it has not demonstrated that it is deprived of a remedy in an English forum. Enforcing the forum selection clause is therefore not unreasonable under the third *Bremen* factor.

Second, Quail contends that the fourth *Bremen* factor counsels against enforcement of the forum selection clause in light of public policy. Quail argues that the forum selection clause, if enforced, "acts as an exculpatory clause" because: 1) English law does not recognize that a classification society owes a duty to a prospective purchaser, and 2) Lloyd's Register would be able to avoid American decisional law, namely *Otto Candies*. Pl. Opp. Mot. Dismiss (Doc. 132), at 18. As indicated above, Quail's English legal expert opined that the law of Florida would be applied by an English court to the facts of this case. Kverndal Decl. (Doc. 132-1), at 3-4, ¶ 6. Also, as shown above, Quail has a legitimate claim for fraud (deceit) in an English court, a claim that does not require demonstrating that a classification society owed a special duty to a prospective purchaser of a vessel. The forum selection clause cannot reasonably be considered to operate as an exculpatory clause. Enforcing the forum selection clause would not thus contravene a strong public policy under the fourth *Bremen* factor.

Third, Quail contends that enforcement of the forum selection clause would lead to an "unreasonable and unjust result of parallel proceedings in different forums" thereby risking "judicial inefficiency" and "potentially competing judgments." Pl. Am. Compl. (Doc. 90), at 63, ¶ 162. Determining the reasonableness of a forum selection clause is a fact-intensive inquiry made on a case-by-case basis, which requires the objecting party to overcome the presumption of validity in international transactions. *Miyoung Son v. Kerzner Int'l Hotels, Inc.*, No. 07-61151-CIV, 2008 WL 4186979, at *3 (S.D. Fla. Sept. 5, 2008). Quail relies on *BP Products North America v. Super Stop 79, Inc.*, 464 F. Supp. 2d 1253 (S.D. Fla. 2006) and *Woods v. Christensen Shipyeards, Ltd.*, No. 04-61432-CIV, 2005 WL 5654643 (S.D. Fla. Sept 23, 2005) in support of its contention that the forum selection clause unduly risks parallel proceedings and inconsistent judgements. Both *BP Products* and *Woods* are, however, materially distinguishable from the instant case.

7

The District Court in *BP Products* first noted that "a forum selection clause should be enforced unless a strong showing is made that the enforcement would be unreasonable and unjust or that the clause was invalid for such reasons as fraud or overreaching." *BP Products*, 464 F. Supp. 2d at 1257 (citing *In re Ricoh Corp.*, 870 F.2d 570, 573-74 (11th Cir. 1989). There the plaintiff sued the defendant in this Court for nonpayment of promissory notes and violations of the Lanham Act. The notes contained a forum selection clause establishing the state court in Broward County, Florida (in this district) as the exclusive forum. Defendant moved to dismiss the promissory note claim based on the forum selection clause. The result of enforcing the venue clause would be that one set of claims between the same parties would remain in this Court while the other set of claims between the parties would be filed in state court, even though, as that the court pointed out, "the claims arise out of the same operative facts." *BP Products*, 464 F. Supp. 2d at 1257. The plaintiff argued the enforcement of the venue clause might result in inconsistent judgments between this Court and the state court and waste judicial resources. The *BP Products* court agreed and denied the motion to dismiss based on the venue selection clause.

In *Woods*, the plaintiffs sued defendant for an unauthorized use of the plaintiff's name and likeness in violation of a contract by which plaintiff's wholly-owned company purchased a yacht from the defendant. The sales contract contained a forum selection clause stating that the state court in Clark County, Washington was the exclusive venue. A third co-plaintiff, subsequently filed suit against the defendant but did not invoke any rights arising under the contract, but instead set forth only statutory and common law tort claims. This Court held that the original plaintiff was bound by the forum selection clause as a third-party beneficiary to the contract. However, the forum selection clause was held unenforceable against the third co-plaintiff who did not seek to invoke any rights arising under the contract. This Court noted that "the 'party seeking to escape his contract [must] show that the trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Woods*, 2005 WL 5654643, at *8 (quoting *Bremen*, 407 U.S. at 19). This Court found that fraud, inconvenience, unfairness of the law of the contracted-for forum, and Florida public policy did not preclude enforcement of the forum selection clause. However, this Court noted that enforcing the forum selection clause would result in dividing the claims against a single party. That is, the defendant would have been forced to

litigate simultaneous claims in Washington state court and this Court. This Court found that this outcome was unreasonable and accordingly chose not to enforce the forum selection clause on those grounds.

Unlike in *BP Products*, if the venue selection clause is enforced, presumably all of Quail's claims against Lloyd's Register will be tried in one forum, therefore, there can be no inconsistent judgment or results as between Quail and Lloyd's Register. And while there may be some duplication of effort resulting in parallel proceedings, it is insufficient to overcome the strong presumption that forum selection clauses in international transactions are enforceable. Unlike *Woods*, Quail's claims are not being divided against a single defendant. Rather, Quail has separate claims against Lloyd's Register in England, and separate claims against CVC and Seahawk in this jurisdiction; each group of claims being capable of standing, and being resolved, on their own merits. Enforcing the forum selection clause here does not create the same concerns regarding parallel proceedings or inconsistent judgments. This case is not being divided between the same two parties as it was in *BP Products* and *Woods*. In light of the foregoing, Quail's assertion of inconsistent judgments from parallel proceedings does not weigh against enforcing the forum selection clause.

Both *BP Products* and *Woods* are also distinguishable from the instant case because *BP Products* and *Woods* did not involve an international transaction between international parties or an international forum selection clause as here.[5] The Supreme Court noted in *Bremen* that there are compelling reasons for enforcing forum selection clauses, especially ones contained in international agreements. Where a non-routine agreement is consummated between parties from different nations, "much uncertainty and the possibility of great inconvenience to both parties could arise if a suit

---

[5] Quail also cites to *In Re Rationis Enterprises, Inc. of Panama*, No. 97-CV-9052, 1999 WL 6364 (S.D.N.Y. Jan. 7, 1999) to contend that the risk of parallel proceedings in an international forum selection clause cautions against its enforcement. However, *Rationis Enterprises* involved a limitation proceeding under 46 U.S.C. App. § 181 *et seq.* where hundreds of international claimants sought restitution for damages resulting from a shipping accident. The District Court noted that, although forum selections clauses have been preciously enforced by the defendants, the size, complexity, and the nature of the proceedings were as such that enforcing the forum selection clause would be unreasonable. *Rationis Enterprises*, 1999 WL 6364 at *3. The District Court's rationale in *Rationis Enterprises*, therefore, does not bear directly the above-styled case as the facts underlying the Quail-Lloyd's Register dispute are significantly different from those in *Rationis Enterprises*.

could be maintained in any jurisdiction in which an accident might occur or if jurisdiction were left to any place where [the parties] might happen to be found." *Bremen*, 407, U.S. at 13. This reasoning bears directly on the transaction and facts in the instant case. Like *Bremen*, the events giving rise to the present cause of action occurred in numerous international locations.[6] Holding that venue is proper is every jurisdiction where Lloyd's Register would be subject to liability would directly contravene the Supreme Court's *Bremen* decision.

Fourth and lastly, Quail asserts the venue clause is unenforceable because of the practical difficulty of compelling foreign witnesses to testify in courts of England. Quail has failed to show, and the Court is not convinced, that Quail will not be able to adequately present its case in an English court—courts in which complex international cases have been litigated for hundreds of years. Moreover, Quail has not shown that Quail would be better able to present its evidence in this Court than in an English court. As the parties acknowledge, this is a case involving witnesses scattered throughout the world. There has been no showing that these witnesses' testimony would be more available here than in England.

The Court does recognize that there is a certain degree of unfairness inherent in requiring a Bahamian plaintiff to litigate its claims in a venue other than the one in which it chose to file suit solely because of a forum selection clause in a contact to which it was not a party. However, in accordance with direct benefits estoppel principles, one who seeks the benefit of another's contract may have to bear the corresponding burdens of that contract. Moreover, there is also an obvious unfairness in requiring a defendant that operates internationally, such as Lloyd's Register, to be denied the benefit of its contracted-for venue, and be subject to the jurisdiction of every forum in which it may be sued. As noted by the Supreme Court in *Bremen*, forum selection clauses, particularly in the context of international transactions, are necessary to provide a level of certainty in a global market. *See Bremen*, 407 U.S. at 12. In the Court's opinion, the particular facts of this case are insufficient to deem enforcing the forum selection clause unconscionable.

## CONCLUSION

For the foregoing reasons, it is hereby

---

[6] For example, at oral argument, the parties acknowledged that Lloyd's Register's surveys on which Quail's claims are predicated were all done overseas—none in the United States.

ORDERED that Defendant Lloyd's Register North America's Motion to Dismiss is GRANTED. The claims against Lloyd's Register North America are dismissed without prejudice. Each party shall bear its own attorneys' fees and costs.

DONE and ORDERED in Chambers at Miami, Florida this 21st day of September 2011.

_____
PAUL C. HUCK
United States District Judge

Copies furnished to:
Counsel of Record