# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 09-23248-CIV-HUCK/BANDSTRA

QUAIL CRUISES SHIP MANAGEMENT,
LTD., a company incorporated under the laws
of the Bahamas,

           Plaintiff,

v.

AGENCIA DE VIAGENS CVC TUR
LIMITADA, a company incorporated under
the laws of Brazil, VALTER PATRIANI, an
individual residing in Brazil, SEAHAWK
NORTH AMERICA, LLC, a Florida
corporation, and RODOLFO SPINELLI, an
individual residing in Florida,

           Defendants.

_____/

## ORDER DENYING DEFENDANT PATRIANI'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION

THIS MATTER is before the Court on Defendant Valter Patriani's ("Patriani") Motion to Dismiss for Lack of Subject Matter Jurisdiction and Lack of Personal Jurisdiction (D.E. # 119), filed June 2, 2010.  For the reasons stated below, the Court denies Patriani's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Lack of Personal Jurisdiction.

## I.     BACKGROUND

The facts relevant to Patriani's Motion to Dismiss are largely the same as those discussed in the Court's previous order on Defendant Lloyd's Register North America's Motion to Dismiss (D.E. # 107).  Plaintiff Quail Cruises Ship Management, Ltd. ("Quail"), a Bahamian corporation, acquired the *M/V Pacific* in June 2008 through the purchase of stock of Templeton International Inc., a corporation whose primary asset was the vessel.  Templeton shares were previously held by Flameck

International S.A., a Uruguayan corporation, and its parent company, Agencia de Viagens CVC Tur Limitada ("CVC"), a Brazilian corporation.  Patriani, a resident and citizen of Brazil, served as President and Managing Director of CVC at all times material to the instant case.  The *Pacific*'s operations were coordinated by SeaHawk, Inc. ("SeaHawk"), a Florida corporation, of which Rodolfo Spinelli ("Spinelli") continues to serve as President.  The *Pacific*'s value was based in part on the pre-sale inspections performed outside the United States by Lloyd's Register North America, a Delaware corporation with an office in Florida.

In its Amended Complaint, Quail alleges that Defendants Patriani, Spinelli, SeaHawk, and CVC conspired to conceal significant deficiencies in the condition of the *Pacific* prior to its sale to Quail.  Specifically, Quail alleges that SeaHawk and Spinelli, acting as agents for CVC and Patriani, were directed to "defer repairs, conceal damages by widespread use of painted cement to cover-up corrosion, wastage and structural damage, and otherwise mask the true deteriorated, wasted and damaged condition of the Vessel. . . ."  Am. Compl. (D.E. # 90), ¶ 27.  Quail also alleges that Patriani directly misrepresented the condition of the *Pacific*.  During the spring of 2008, Quail entered into negotiations with CVC to acquire the *Pacific*.  Quail asserts that in January 2008 Patriani attended a Board of Directors meeting of Quail Travel Group, S.A., Quail's parent company, in Madrid, Spain.  Quail alleges that during that meeting Patriani represented that the *Pacific* was in "excellent condition" and that CVC had corrected all deficiencies and made improvements to the *Pacific*.  *Id.* ¶ 54.  Quail alleges that at a subsequent meeting held in February 2008 in São Paulo, Brazil, Patriani continued to promote the sale of the *Pacific* to Quail, stating that the *Pacific* had been "completely restored and well maintained."  *Id.* ¶ 55.   During the spring of 2008, other CVC personnel made similar representations to Quail that the *Pacific* was in excellent operating condition.  Based on projected revenues and the represented condition of the vessel, Quail acquired the *Pacific* for $14,892,000.00 though a share purchase agreement executed with CVC on June 10, 2008 in Miami, Florida.

After the sale and transfer of the *Pacific*, Quail discovered significant deficiencies in the condition of the vessel.  These deficiencies were of such a significance that, upon further inspection, the *Pacific*'s Passenger Ship Safety Certificate was withdrawn by Lloyd's Register, rendering the vessel inoperable as a passenger cruise ship under international convention. *Id.* ¶ 85. Quail maintains

that the degree of corrosion, wastage, thinning, and other deficiencies were of such magnitude that they must have existed prior to the date of sale. *Id.* ¶ 100. Quail sued CVC, Patriani, Lloyd's Register, Spinelli, and SeaHawk for fraud under the Securities and Exchange Act of 1934 (Count I), civil conspiracy to commit fraud in the inducement (Count II), maritime tort for fraud in the inducement (Count III), maritime tort of recklessness (Count IV), negligence and negligent misrepresentation (Count V), common law tort for fraud in the inducement (Count VI), and breach of fiduciary duty (Count VII). [1]

Patriani now moves to dismiss the Amended Complaint for lack of personal jurisdiction and lack of subject matter jurisdiction. The Court initially dismissed the case for lack of subject matter jurisdiction and did not reach the issue of personal jurisdiction. On July 8, 2011, the Eleventh Circuit reversed the dismissal and remanded for further proceedings. *See Quail Cruises Ship Management, Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307 (11th Cir. 2011). The Eleventh Circuit held that this Court has subject matter jurisdiction over the claims arising out of the Securities and Exchange Act, § 10(b) (codified at 15 U.S.C. § 78j(b)), and S.E.C. Rule 10b-5 (codified at 17 C.F.R. § 240.10b-5). Accordingly, Patriani's Motion to Dismiss for of personal jurisdiction is now ripe for adjudication.

Patriani asserts that personal jurisdiction is lacking on several grounds. First, Patriani argues that none of his conduct alleged in the Amended Complaint was performed in, or directed at, Florida. Second, Patriani argues that Quail has not adequately alleged that he was part of any conspiracy. Third, Patriani argues that the fiduciary shield doctrine prevents the Court from exercising personal jurisdiction over him for his actions committed in his capacity as President and Managing Director of CVC. Fourth, Patriani asserts that any alleged agency relationship between Patriani and SeaHawk, or Patriani and Spinelli, is insufficient as a matter of fact and law to establish personal jurisdiction. For the reasons discussed below, the Court can appropriately exercise personal jurisdiction over Patriani.

---

[1] The Court dismissed Lloyd's Register North America as a defendant in this case on September 21, 2011 (D.E. # 196).

II.     **ANALYSIS**

    A.     **Burden of Proof**

        A plaintiff who asks a court to exercise personal jurisdiction over a non-resident defendant has the initial burden of alleging facts in the complaint that are sufficient to support a prima facie case of jurisdiction. *United Technologies v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *Polski Linine Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986). The defendant must then rebut the plaintiff's allegations in support of personal jurisdiction by pleadings and declarations if a prima facie case of that personal jurisdiction is established. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). If the defendant challenges jurisdiction by submitting evidence in support of its position, the burden then shifts back to the plaintiff to produce evidence supporting jurisdiction. *Diamond Crystal Brands, Inc. v. Food Movers International, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010); *Posner v. Essex Insurance Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). Where the complaint and supporting evidence conflict with the defendant's evidence, "the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal Brands*, 593 F.3d at 1257; *Abramson v. Walt Disney Co.*, 132 Fed. App'x. 273, 275 (11th Cir. 2005).

    B.     **Personal Jurisdiction Analysis**

        A federal court seeking to exercise jurisdiction over a non-resident defendant must undertake a two-step analysis to determine whether personal jurisdiction exists. First, the Court must determine whether an exercise of jurisdiction is appropriate under the forum state's long-arm statute. *See Mazer*, 556 F.3d at 1274; *AXA Equitable Life Ins. Co., v. Infinity Fin. Group, L.L.C.*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 500 (Fla. 1989). Second, the Court must examine whether the exercise of personal jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *See Mazer*, 556 F.3d at 1274.

       *(1)     Quail has established a Prima Facie Case of Jurisdiction*

        (a)     Florida Long-Arm Statute

Quail has alleged sufficient jurisdictional facts to establish a prima facie case within the ambit of Florida's long-arm statute.  Where a cause of action is based on a federal question arising under a statute that is silent regarding service of process, the Court is required to examine Florida's long-arm statute to determine whether personal jurisdiction exists.[2]  *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996); Fed. R. Civ. P. 4(e).  The reach of Florida's long-arm statute is a question of state law.  The Court, therefore, must construe the law as would the Florida Supreme Court.  *See Mazer*, 556 F.3d at 1274; *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir. 2002).  The Florida long-arm statute bestows personal jurisdiction on a defendant who, *inter alia*, commits a tortious act within the state. [3]

In support of its prima facie case of personal jurisdiction, Quail contends that Patraini's involvement in the conspiracy to misrepresent the condition of the *Pacific* amounts to the commission of a tortious act.  Alternatively, Quail claims that Patriani committed a tortious act in Florida through his agents SeaHawk and Spinelli.  Accordingly, Quail asserts that Patriani is subject to personal jurisdiction under Florida's long-arm statute.

The Eleventh Circuit, the courts of Florida, and this Court have held that the Florida long-arm statute reaches all of the alleged participants in a civil conspiracy if at least one act in furtherance of

---

[2] The Amended Complaint alleges federal question jurisdiction under 28 U.S.C. § 1331 (for violations of Securities and Exchange Act, § 10(b) (codified at 15 U.S.C. § 78j(b)), and S.E.C. Rule 10b-5 (codified at 17 C.F.R. § 240.10b-5)).  *See* Am. Compl. ¶ 3.  The Amended Complaint also alleges maritime jurisdiction under 28 U.S.C. § 1333, and supplemental jurisdiction under 28 U.S.C. § 1367.  *Id*. ¶¶ 5-6.  All of these statutes are silent as to service of process

[3] Quail has alleged that Patriani, a resident and citizen of Brazil, is subject to specific jurisdiction under Florida's long-arm statute, which provides:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> . . .
>        (b) Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(b).  *See* Am Compl. ¶ 7.

5

the conspiracy is committed in Florida.  *Mazer*, 556 F.3d at 1281-82; *AXA Equitable Life*, 608 F. Supp. 2d at 1354 ("Florida law construes the state's long-arm statute to reach all of the alleged participants in a civil conspiracy, at least one act in furtherance of which is committed in Florida.") (citing *Machtinger v. Inertial Airline Servs., Inc*., 937 So. 2d 730, 734-36 (Fla. 3d DCA 2006) (holding that if a plaintiff successfully alleges that any member of a conspiracy commits a tortious act in Florida in furtherance of the conspiracy, then all of the conspirators are subject to Florida's long-arm jurisdiction) and *Wilcox v. Stout*, 637 So. 2d 335, 336 (Fla. 2d DCA 1994) ("Where a civil conspiracy to commit tortious acts has been successfully alleged, and some of those acts are alleged to have been accomplished within the state of Florida, we have no hesitancy in applying the well-accepted rules applicable to the liability of co-conspirators in the criminal context").  The Court may also properly exercise personal jurisdiction over a defendant in a Florida conspiracy even if the alleged conspirator has no other connections with the forum state.  *Mazer*, 556 F.3d at 1281-82; *AXA Equitable Life*, 608 F. Supp. 2d at 1354; *Machtinger*, 937 So. 2d at 734-36.

This Court has previously applied a three part test to determine the existence of personal jurisdiction over a non-resident defendant in a civil conspiracy.  *See Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, 515 F. Supp. 2d 1288, 1292 (S.D. Fla. 2007); *Robert D. Harley Co., Ltd. v. Shapiro*, No. 05-21177-CIV, 2007 WL 196854, *5 (S.D. Fla. 2007), *Hasenfus v. Secord*, 797 F. Supp. 958, 961 (S.D. Fla. 1989).[4]  Under the test articulated in *Hasenfus* and subsequent cases, personal jurisdiction can be exercised over a non-resident defendant under the "co-conspirator theory" if: "(1) jurisdiction can, under the traditional tests discussed below, be asserted over a "resident" defendant (*i.e.* one with sufficient ties to the state); (2) the plaintiff can demonstrate the existence of a

---

[4]  The Eleventh Circuit articulated a slightly different test to determine the existence of personal jurisdiction over a non-resident defendant in a civil conspiracy.  *See Posner v. Essex Ins., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999).  The test relied, in part, on the holding of the Florida Fourth District Court of Appeal in *Execu-Tech Bus. Sys. v. New Oji Paper Co.*, 708 So. 2d 599, 600 (Fla. 4th DCA 1998).  The Florida Supreme Court, however, subsequently reversed the Fourth District Court of Appeal.  *See Execu-Tech Bus. Sys. v. New Oji Paper Co.*, 752 So. 2d 582, 600 (Fla. 2000).  This Court has accordingly declined to apply the Eleventh Circuit's *Posner* test in light of the Florida Supreme Court's holding in *Execu-Tech*.  *See Platypus Wear*, 515 F. Supp. 2d at 1292-93; *Robert D. Harley Co.*, 2007 WL 196854, at *5.  As such, the appropriate test to determine the existence of personal jurisdiction over a non-resident defendant in a civil conspiracy is that outlined in *Platypus Wear* and *Hasenfus*.

conspiracy in which the non-resident defendant and the resident defendant participated; and (3) an overt act in furtherance of the conspiracy took place within the state." *Platypus Wear*, 515 F. Supp. 2d at 1292 (quoting *Hasenfus*, 797 F. Supp. at 961).

Quail has successfully established a prima facie case that Patriani committed a tortious act within the meaning of the Florida long-arm statute based on Quail's allegations of a conspiracy. First, personal jurisdiction can be successfully asserted over resident defendants, as both Spinelli and SeaHawk are residents and citizens of Florida. Second, Quail has sufficiently alleged that Patriani, CVC, SeaHawk and Spinelli engaged in a conspiracy to fraudulently conceal deficiencies and misrepresent the condition of the *Pacific* in anticipation of its sale to Quail. The Amended Complaint alleges that at all times, SeaHawk and Spinelli acted as agents of Patriani and that the services provided by SeaHawk were at the direction and approval of Patriani and CVC. Am. Compl. ¶¶ 7, 15-16, 30. The complaint also alleges that CVC, while under the direct control of Patriani, instructed SeaHawk and CVC to defer repairs and conceal damage, corrosion, wastage, and other deficiencies of the *Pacific*. *Id.* ¶¶ 27, 56. The Amended Complaint also asserts that Patriani played a direct and material part in this conspiracy to commit fraud because Patriani personally represented that CVC had "spent significant sums of money in correcting all deficiencies" in the *Pacific*'s condition, and continued to promote the sale of the vessel. *Id.* ¶¶ 54-56, 60. Quail also maintains that Patriani requested that Quail continue to retain SeaHawk as the *Pacific*'s operations and technical manager to conceal the fraud. *Id*. ¶¶ 60, 110. Third, Quail establishes in its Amended Complaint that SeaHawk and Spinelli committed acts in furtherance of the conspiracy in Florida. The Amended Complaint alleges that, while in Florida, SeaHawk and Spinelli engaged in purposeful "efforts to conceal material damage" and delay repairs of the *Pacific*. Am. Compl. ¶ 41. Moreover, Quail establishes that the *Pacific*'s contract of sale was consummated in Miami, Florida.[5] The Amended Complaint also alleges that while in Florida, Spinelli falsely informed Quail that all of the *Pacific*'s outstanding Conditions of Class had been corrected and made other material misrepresentations about

---

[5] The Court dismissed Lloyd's Register North America as a defendant in this case on September 21, 2011 (D.E. # 196). The Eleventh Circuit also noted that "[t]he transaction for the acquisition of the Templeton stock closed in Miami, Florida on June 10, 2008, by means of the parties submitting the stock transfer documents by express courier into this District . . . [and that the] purchase and sale agreement confirms that it was not until this domestic closing that title to the shares was transferred to Quail." *See Quail Cruises*, 645 F.3d at 1310.

the vessel's condition.  *Id.* ¶¶ 16, 62.  Further, the Amended Complaint alleges that Lloyd's Register made unwarranted deletions of Conditions of Class from its Florida office as part of the conspiracy. *Id.* ¶ 16.

Quail also establishes a prima facie case that Patriani is subject to personal jurisdiction because he committed a tortious act in Florida through his agents SeaHawk and Spinelli.  The Florida long-arm statute provides that personal jurisdiction attaches when a defendant, either "personally or through an agent," commits a tortious act in Florida.  Fla. Stat. § 48.193.  The Eleventh Circuit has also held that "[u]nder Florida law, a principal is liable for the torts of his agents."  *Hunt v. Liberty Lobby*, 720 F.2d 631, 649 (11th Cir. 1983) (citations omitted).  As discussed above the Amended Complaint alleges that SeaHawk and Spinelli acted as Patriani's and agent in operating and coordinating all of the *Pacific*'s activity.  Am. Compl. ¶¶ 15, 30.  Quail also maintains that SeaHawk and Spinelli acted under the direction of Patriani to conceal defects in the *Pacific*.  *Id.* ¶¶ 27, 56. Moreover, the Share Purchase Agreement lists SeaHawk as the "Operator/I.S.M. Manager" of the *Pacific*.  Def. CVC Mot. Dismiss, Ex. A (D.E. # 55-1) at 16.  Quail has thus sufficiently asserted for jurisdictional purposes that an agency relationship existed between Patriani, SeaHawk, and Spinelli, and that same tortious conduct occurred in Florida through this agency relationship.

(b)     Due Process

Because Quail has sufficiently alleged that Patriani's conduct falls within Florida's long-arm statute, the Court must now determine whether the exercise of personal jurisdiction over Patriani comports with the Due Process Clause of the Fourteenth Amendment.  The Court's exercise of personal jurisdiction comports with the Due Process Clause if the defendant "has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  To determine whether a defendant has established sufficient minimum contacts to satisfy due process, the defendant's contacts with the forum state (1) "must be related to the plaintiff's cause of action or have given rise to it;" (2)

8

"must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum;" and (3) "must be such that the defendant should reasonably anticipate being haled into court there." *Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citations omitted); *see Future Technology Today, Inc. v. OSF Healthcare Systems*, 218 F.3d 1247, 1251-52 (11th Cir. 2000) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1984)). To determine whether exercising jurisdiction over a defendant comports with traditional notions of fair play and substantial justice, the Court must consider "the burden on the defendant, the interests of the forum . . . , and the plaintiff's interest in obtaining relief." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir.1996) (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113, (1987)).

Quail has established that Patriani has sufficient minimum contacts with Florida to establish personal jurisdiction. First, Patriani's contact with Florida is related to the cause of action because he communicated into Florida to SeaHawk and Spinelli regarding the operation of the *Pacific*. The Amended Complaint alleges that this communication into Florida was in furtherance of a conspiracy to conceal and misrepresent the vessel's condition and is therefore related to the cause of action. Second, Patriani and his co-conspirators have availed themselves of the privilege of conducting business in Florida. The sale of the *Pacific* was consummated in Florida. The Share Purchase Agreement provided that any dispute arising under the agreement shall be governed by the laws of Florida. Def. CVC Mot. Dismiss, Ex. A (D.E. # 55-1) at 8. The Share Purchase Agreement also specified that any arbitration occurring between the parties be conducted in Miami, Florida, "which the parties hereby acknowledge as fair and convenient." *Id.* Third, Patriani should reasonably anticipate being haled into court in Florida because the sale for the *Pacific* was consummated in Florida, Florida residents SeaHawk and Spinelli coordinated the *Pacific*'s operations on Patriani's and CVC's behalf, and Florida-based Lloyd's Register coordinated and scheduled inspections of the *Pacific*.

Exercising personal jurisdiction over Patriani also comports with traditional notions of fair play and substantial justice. Quail has, of course, an interest in obtaining relief in Florida. Quail alleges that Patriani, through his participation in a conspiracy or by directing SeaHawk and Spinelli, has committed wrongs in, or directly affecting, Florida. Should Quail's claims ultimately prove

successful, it will also successfully prove that it suffered injury in Florida, since it was victim of a fraud regarding the sale of the *Pacific* that was consummated in Florida. Florida also has an interest in ensuring that tortious conduct does not occur within its borders. Thus, the Court's exercise of personal jurisdiction over Patriani comports with the requirements of the Due Process Clause of the Fourteenth Amendment.

### (2)    *Patriani Fails to Rebut the Quail's Prima Facie Case*

Because Quail has alleged a prima facie case that personal jurisdiction exists, the burden now shifts to Patriani to demonstrate that jurisdiction is lacking. *See Internet Solutions*, 557 F.3d at 1295. Patriani contends that he is not subject to the personal jurisdiction of the Court for four reasons: (1) none of the allegations in the Amended Complaint relating to him were performed in, or directed at Florida, (2) Quail has not adequately alleged Patriani was part of any conspiracy; (3) personal jurisdiction is barred by the corporate shield doctrine; and (4) Quail's allegations are insufficient to show an agency relationship existed between Patriani, SeaHawk, and Spinelli. However, as discussed below, none of these arguments caution the Court against exercising personal jurisdiction over Patriani.

First, Patriani asserts that personal jurisdiction is lacking because the Amended Complaint does not allege that any of his actions were committed in, or directed at, Florida. However, as discussed above, a non-resident defendant in a Florida civil conspiracy is subject to personal jurisdiction even if the alleged conspirator otherwise has no connections with the state. *AXA Equitable Life*, 608 F. Supp. 2d at 1354. *See also Mazer*, 556 F.3d at 1281-82; *Machtinger*, 937 So. 2d at 734-36. Moreover, both the Supreme Court and the courts of Florida have made clear that physical presence in the judicial forum is not necessary to establish personal jurisdiction over a defendant. *See Burger King*, 471 U.S. at 467 (stating that the Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there"); *Wendt v. Horowitz*, 822 So. 2d 1252, 1257-58 (Fla. 2002) ("There is no question that physical presence is not necessarily required to satisfy the constitutionally mandated requirement of minimum contacts."). A tortious act for purposes of Florida's long-arm statute may be committed "through the non-resident defendant's telephonic, electronic, or written communications into Florida. *AXA Equitable Life*, 608

10

F. Supp. 2d at 1353 (quoting *Wendt*, 822 So. 2d 1260); *accord Internet Solutions*, 557 F.3d at 1296; *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005). Quail has alleged that Patriani communicated into Florida when directing SeaHawk and Spinelli to defer repairs or otherwise conceal the true condition of the *Pacific*. Therefore, personal jurisdiction is not defeated by Patriani's mere assertion that his alleged tortious conduct was not directed at Florida.

Second, Patriani argues that Quail has not asserted sufficient facts to establish that he participated in a conspiracy to misrepresent the condition of the *Pacific*. Patriani asserts that this Court's previous holding in *Platypus Wear* counsels the Court against exercising personal jurisdiction in the instant case. The Court disagrees. At issue in *Platypus Wear* was whether the owner of a trademark could hold a non-resident defendant personally liable for conspiring to commit fraud. *Platypus Wear*, 515 F. Supp. 2d at 1290-92. There, the plaintiff sought to establish personal jurisdiction over a foreign defendant by alleging that he had a controlling interest in a corporation named as a co-conspirator. This Court found that the evidence offered was insufficient to establish personal jurisdiction over the defendant. The Court noted that the defendant was neither physically or telephonically present at a meeting where the alleged tortious conduct transpired, and that all of the actions attributable to the defendant occurred after the alleged conspiracy took place. *Id*. at 1296. Accordingly, the Court found that the evidence was insufficient to establish that the non-resident defendant participated in a conspiracy, and held that personal jurisdiction was lacking.

In the instant case, however, Quail has not only sufficiently alleged the execution of an agreement among all of the co-conspirators, but has also alleged specific actions attributable to Patriani that occurred during, and in furtherance of, that alleged conspiracy. Quail alleges that Patriani personally misrepresented that CVC had "spent significant sums of money in correcting all deficiencies" in the *Pacific*'s condition and continued to promote the sale of the vessel during the conspiracy. Am. Compl. ¶¶ 54-56, 60. Quail also alleges that Patriani requested that Quail continue to retain SeaHawk as the *Pacific*'s operations and technical manager to conceal the fraud. *Id*. ¶¶ 60, 110. Although he is required to offer evidence to rebut Quail's prima facie case, Patriani has not refuted Quail's allegations with any evidence. Thus, the instant case is factually distinguishable from

*Platypus Wear*.  Quail has sufficiently alleged that Patriani's tortious conduct occurred during the existance of the conspiracy.

Third, Patriani argues that the corporate shield doctrine prohibits the Court from exercising personal jurisdiction over him.  Under the corporate shield doctrine, a non-resident corporate officer cannot be sued in a forum for acts or omissions performed on behalf of a corporation.  *See Frohnhoefer v. Pontin*, 958 So. 2d 420, 422 (Fla. 3d DCA 2007) (citing *Doe v. Thompson*, 620 So. 2d 1004 (Fla. 1993)).  Patriani maintains that Quail has not alleged that he performed any acts outside the scope of his duties of President and Managing Director of CVC. Patriani also avers that he is not subject to personal jurisdiction under the corporate shield doctrine because his alleged conduct was not directed at, or felt in, Florida.

This Court has previously held, and Florida law is clear, that "if an officer, director, or agent commits or participates in a tort, whether or not his actions are by authority of the corporation or in furtherance of the corporate business, that individual will be liable to third persons injured by his actions, regardless of whether liability attaches to the corporation for the tort."  *Buckner v. Luther Campbell*, No. 09-22815-CIV, 2010 WL 5058314, *2 n.2 (S.D. Fla. Dec. 6, 2010).[6]  In *Buckner*, this Court considered whether a defendant could be held personally liable for tortious conduct committed in his role as director of a corporation.  Applying Florida law, this Court held that the defendant was not shielded from liability for tortious conduct even when serving in his capacity as a corporate officer.  The Court noted that "it is not necessary that the corporate 'veil' be pierced or even discussed."  *Id*. at *2 (quoting *L.C.L. Theatres, Inc. v. Columbia Pictures Industries, Inc.*, 619 F.2d

---

[6]  This Court noted in *Buckner* that Florida courts are uniform in holding that a corporate officer is liable for tortious conduct even if his actions are by authority of the corporation or in furtherance of the corporate business.  *Buckner*, 2010 WL 5058314, *2 n.2.  *See, e.g., Thorpe v. Gelbwaks*, 953 So. 2d 606, 611 (Fla. 5th DCA 2007) ("The corporate shield doctrine does not protect a corporate officer who commits fraudulent or other intentional misconduct. . . ."); *First Fin. USA, Inc. v. Steinger*, 760 So. 2d 996, 997-98 (Fla. 4th DCA 2000) ("individual officers and agents of a corporation may be held personally liable for their tortious acts, even if such acts were committed within the scope of their employment or as corporate officers."); *Scutieri v. Miller*, 605 So. 2d 972, 973 (Fla. 3d DCA 1992) ("Individual officers and agents of a corporation are personally liable where they have committed a tort even if such acts are performed within the scope of their employment or as corporate officers or agents.") (quoting *Littman v. Commercial Bank & Trust Co.*, 425 So. 2d 636, 640 (Fla. 3d DCA 1983), *Adams v. Brickell Townhouse, Inc.*, 388 So. 2d 1279 (Fla. 3d DCA 1980), and *Dade Roofing and Insulation Corp. v. Torres*, 369 So. 2d 98, 99 (Fla. 3d DCA 1979)).

455, 457 (5th Cir. 1980); *accord Planet Bingo, Inc. v. Kerr*, No. 5:10-cv-315, 2011 WL 845235 (N.D. Fla. 2011) (stating that "the corporate shield doctrine does not apply where, as Plaintiff has alleged in this case, an individual defendant commits or participates in a tort"); *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*, 125 F. Supp. 2d 1093, 1104 (S.D. Fla. 2000) (stating that "Florida courts uniformly hold that if an officer, director, or agent commits or participates in a tort, whether or not his actions are by authority of the corporation or in furtherance of the corporate business, that individual will be liable to third persons injured by his actions.").

Here, Quail has alleged that Patriani, the President and Managing Director of CVC, personally participated in two fraud claims (Counts I and III) and a civil conspiracy claim (Count II), which Florida recognizes as an independent tort. *See Wilcox*, 637 So. 2d at 336. Furthermore, Patriani's tortious conduct was directed at, and felt in, Florida. The Share Purchase Agreement for the *Pacific* was executed in Florida. The Eleventh Circuit previously held that the Court has subject matter jurisdiction over alleged violations of securities law because the Share Purchase Agreement was consummated in Florida. *See Quail Cruises*, 645 F.3d at 1310-11. Moreover, Quail alleges that Patriani communicated into Florida when directing SeaHawk and Spinelli to defer repairs or otherwise conceal the true condition of the *Pacific*. Patriani is not, therefore, personally shielded for his alleged tortious conduct even though the conduct giving rise to the cause of action may have occurred while serving in his capacity as Managing Director and President of CVC.

Fourth, Patriani asserts that personal jurisdiction cannot be established based on an alleged agency relationship between Patriani and SeaHawk/Spinelli. However, as indicated above, Quail has sufficiently alleged the existence of such an agency relationship. Yet, even if that were not the case, the Court would have personal jurisdiction in light of the allegations of Patriani's participation in a conspiracy.

Because Quail established a prima facie case of personal jurisdiction, and Patriani failed to rebut that case, the Court's exercise of personal jurisdiction is proper.

## III.   **CONCLUSION**

For the foregoing reasons, it is hereby

ORDERED that Defendant Valter Patriani's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Lack of Personal jurisdiction is DENIED.

DONE and ORDERED in Chambers at Miami, Florida this 24th day of October 2011.

_____
PAUL C. HUCK
United States District Judge

Copies furnished to:
Counsel of Record

14